FOURTH DIVISION
February 17, 2011

No. 1-09-0695

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SK PARTNERS I, LP; SK PARTNERS II, LP; | ) | Appeal from the |
| SK PARTNERS III, LP; SK PARTNERS IV, LP; | ) | Circuit Court of |
| and SAL'S HOLDING COMPANY, | ) | Cook County |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | 06 L 9975 |
| | ) | |
| METRO CONSULTANTS, INC., | ) | Honorable |
| | ) | Allen S. Goldberg, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Gallagher and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

This appeal involves an accounting malpractice claim stemming from certain partnerships'
overpayment of taxes due to asset depreciation miscalculations by their accountant. The claim
was dismissed by the circuit court due to the expiration of the applicable statute of limitations,
despite plaintiffs' protestations to the contrary which were based on the discovery rule. For the
reasons discussed below, we affirm the ruling of the trial court.

Plaintiffs, SK Partners I through IV and Sal's Holding Company (which has ownership
interest in the partnership entities), are related entities that collectively own various real estate
assets. Yvonne DiMucci is a trustee of the SK Partners entities and president of Sal's Holding
Company, and she acted as their agent in the events that transpired in the underlying case.

Defendant, Metro Consultants, Inc., is an Illinois corporation which was first retained by plaintiffs in 2000 to provide accounting services for the purpose of filing income taxes. Ultimately, defendant prepared plaintiffs' federal income tax returns for the tax years of 2000, 2001, and 2002. Accordingly, defendant's accounting services were last used on or before April 15, 2003, and plaintiffs subsequently retained the accounting firm CJBS to perform their accounting services.

Jeffrey Stuart, an accountant with CJBS, testified during a deposition that he met Yvonne in 2000 and that he subsequently provided accounting services for her involving a variety of matters. It was not until February 11, 2004, however, that a written engagement letter was entered into, engaging CJBS to perform virtually all of plaintiffs' accounting tasks. In relation to his other accounting work for Yvonne, Stuart reviewed plaintiffs' previous years' tax returns and Stuart testified that in October 2003, "it appeared something wasn't correct about [the] basis."[1] According to Stuart, he believed there were inconsistencies in the previous tax documents, indicating that the depreciation of plaintiffs' real estate assets was understated, which would cause the tax returns to overstate income, resulting in a greater tax liability for plaintiffs. Stuart believed that the initial mistake occurred in 1999 and was carried through 2000 to 2002, which essentially comprised the time span that defendant prepared plaintiffs' tax returns. In November 2003, Stuart informed Yvonne that it could take up to a year to properly investigate the issue and file amended tax returns. When asked to interpret a depreciation schedule in an accounting document

[1]Stuart explained "basis" as the "cost basis or the depreciation basis that's being used on the books and used for calculating depreciation on the different assets and the holding cost value of the land that's held on the different entities."

dated September 8, 2004, Stuart confirmed that by then it was "obvious" that depreciation had been miscalculated. An amended tax return was filed on September 11, 2004, for Sal's Holding Company, and amended returns for the SK Partners entities were filed in October 2004.

The Internal Revenue Service (IRS) conducted an audit after receiving the amended tax returns and subsequently issued a series of refund checks, the first being issued on December 13, 2004, and the last on April 21, 2006.[2] Plaintiffs commenced the underlying action on September 21, 2006, against defendant for accounting malpractice, claiming defendant was negligent in the preparation of plaintiffs' tax returns and causing damages by failing to claim a proper depreciation deduction. The complaint was later amended, but on April 16, 2007, defendant filed a motion to dismiss plaintiffs' complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2006)), arguing that the applicable statute of limitations period had expired. The circuit court granted defendant's motion to dismiss, leading to plaintiffs' timely appeal.

Plaintiffs first contend that the circuit court improperly dismissed their complaint under section 2-619, through an incorrect application of the statute of limitations to their claims. A section 2-619 motion to dismiss:

" 'admits the legal sufficiency of the complaint and raises defects, defenses or other

affirmative matters, such as the untimeliness of the complaint, which appear on the face of

---

[2]Although the exact dates of the issued checks were in an exhibit used during Stuart's deposition, the exhibit is inexplicably missing from the record on appeal. The exact dates, however, are not required to properly dispose of this appeal and the dates as stated within the briefs are not disputed by the parties.

the complaint or are established by external submissions which act to defeat the plaintiff's claim, thus enabling the court to dismiss the complaint after considering issues of law or easily proved issues of fact.' " *MC Baldwin Financial Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 22 (2006) (quoting *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1144 (2001)).

We review a section 2-619 motion to dismiss *de novo*. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008).

A cause of action based on professional negligence requires the following elements: "(1) the existence of a professional relationship, (2) a breach of duty arising from that relationship, (3) causation, and (4) damages." *MC Baldwin Financial Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 14 (2006). The applicable statute of limitations is controlled by section 13-214.2(a) of the Code, providing that:

> "Actions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting Act, as amended, or any of its employees, partners, members, officers or shareholders, for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214.2(a) (West 2006).

Incorporated within section 13-214.2(a) is the discovery rule, "which delays commencement of the statute of limitations until the plaintiff knows or reasonably should have known of the injury and that it may have been wrongfully caused." *Dancor International, Ltd. v. Friedman,*

4

1-09-0695

*Goldberg & Mintz*, 288 Ill. App. 3d 666, 672 (1997).

Plaintiffs first argue the circuit court erred in relying on *Dancor International, Ltd.* in its decision. This court, in *Dancor International, Ltd.*, held:

"The discovery rule has never been interpreted to delay commencement of the statute of limitations until a person acquires actual knowledge of negligent conduct. Rather, it has been interpreted to delay commencement until the person has a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue." *Dancor International, Ltd.*, 288 Ill. App. 3d at 673.

Plaintiffs assert that it was not until December 13, 2004, when the first refund check was issued to them by the IRS, that the statute of limitations began to run, because that is the date that they had actual knowledge of damages relative to defendant's conduct. This position, however, is entirely irrelevant, as we and the supreme court have specifically held that, under the discovery rule, a statute of limitations may run despite the *lack* of actual knowledge of negligent conduct. See *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 257 (1994); *Gale v. Williams*, 299 Ill. App. 3d 381, 387 (1998); *Dancor International, Ltd.*, 288 Ill. App. 3d at 673.

This court has recently considered the same statute of limitations in an accounting malpractice situation where tax deficiencies, *i.e.*, an underpayment of taxes, were first found by the IRS. See *Federated Industries, Inc. v. Reisin*, 402 Ill. App. 3d 23 (2010). In *Federated Industries, Inc.*, this court adopted the rule that "the statute of limitations in an accountant malpractice case involving increased tax liability begins to run when the taxpayer receives the statutory notice of deficiency *** or at the time when the taxpayer agrees with the IRS' proposed

5

deficiency assessments." *Federated Industries, Inc.*, 402 Ill. App. 3d at 36. Plaintiffs, although they do not cite to *Federated Industries, Inc.*, urge us to adopt a similar rule in this case, arguing that the statute of limitations did not trigger until the IRS determined that plaintiffs' previous tax returns were calculated incorrectly and issued a refund.

The case *sub judice*, however, is clearly distinguishable because it does not involve a tax deficiency that was first noticed by the IRS, but rather an overpayment of taxes first noticed by a different accountant. Nevertheless, we find that *Federated Industries, Inc.* provides helpful guidance in our analysis. *Federated Industries, Inc.* relied on decisions from various jurisdictions that considered similar cases in coming to its decision, and in particular, discussed at length the rule in *International Engine Parts, Inc. v. Feddersen & Co.*, 888 P.2d 1279 (Cal. 1995), where the Supreme Court of California stated that it adopted a deficiency assessment approach because it "serves as a finalization of the audit process and the commencement of actual injury because it is the trigger that allows the IRS to collect amounts due and the point at which the accountant's alleged negligence has caused harm to the taxpayer." (Emphasis omitted.) *International Engine Parts, Inc.*, 9 888 P.2d at 1295. This court, in adopting the rule outlined in *International Engine Parts, Inc.*, quoted the above language with approval. *Federated Industries, Inc.*, 402 Ill. App. 3d at 34. While the rule in *Federated Industries, Inc.* does not readily apply to situations of tax overpayments, its underlying rationale for determining the commencement of the actual injury is quite compelling.

Plaintiffs aver that they "did not have actual damages when Jeff Stuart filed the amended tax returns, but instead sustained actual damages when the IRS accepted the Amended Tax

Returns and made the first refund." At first blush, this argument is undeniably contradictory to allegations made in their verified complaint, which alleged that after "discovering the mistake, [plaintiffs] were forced to amend their income tax returns" and that they "suffered a loss of the depreciation deductions, excess attorneys fees and accountant fees," as well as "a loss of the interest and economic value of the money" overpaid to the IRS. Our review of the record indicates that defendant relied on understated depreciation figures calculated by a previous accountant and used those figures in filing plaintiffs' subsequent tax returns. This resulted in an overstatement of plaintiffs' income and, therefore, an overpayment of taxes. Logically then, actual damages occurred at the moment taxes were overpaid. Applying this same logic to cases where taxes are underpaid, we would also conclude that there are no actual damages until a deficiency is assessed, which is consistent with the rule outlined in *Federated Industries, Inc.* In such cases, negligent conduct may have occurred upon the preparation of the tax return but the taxpayer actually retains more income than allowed and has not suffered actual damages yet. An overpayment of taxes, however, immediately deprives the taxpayer of income that was rightfully his to retain in the first place. Accordingly, plaintiffs' assertion that damages were not incurred until they received a refund is misguided. In fact, the receipt of a refund check increases plaintiffs' monetary assets and is essentially mitigation of the damages that already occurred, *i.e.*, the overpayment of taxes.

To reiterate, in cases where there is a tax deficiency due to an accountant's negligence, the likely scenario would be that the negligent conduct is discovered by the IRS and subsequently a deficiency, *i.e.*, damages, would be assessed. The scenario essentially reverses itself in cases

involving a tax overpayment due to an accountant's alleged negligence, such as the case at bar. Damages occur immediately upon the overpayment of taxes, and only later would the negligent conduct be discovered. Therefore, in establishing the starting date of the statute of limitations here, the pertinent issue before us is determining when the tax overpayment was sufficiently discovered such that plaintiffs had a "reasonable belief that the injury was caused by wrongful conduct thereby creating an obligation to inquire further on that issue." *Dancor International, Ltd.*, 288 Ill. App. 3d at 673.

During Stuart's deposition, he was asked what his belief was in November 2003 regarding the inconsistencies in the previous tax returns and he answered as follows:

> "When I was looking at the alternative minimum tax calculation which took into account depreciation, there were some inconsistencies that just didn't make sense to me and needed further investigation, but it just didn't appear that all the cost basis had been properly recorded onto the partnerships, all the stepped-up cost basis had been properly recorded."

By November 11, 2003, Stuart had communicated this to plaintiffs and was told to inquire further. Stuart told plaintiffs it would take up to a year to file the amended returns. The parties do not dispute Stuart's recollection or the time of these facts. From this, it is clear that Stuart had already expended considerable time and effort calculating and analyzing plaintiffs' tax returns. By November 11, 2003, Stuart had constructive knowledge that previous tax returns were problematic, as he was able to point out specifically that the depreciation as previously calculated and reported was erroneous. Furthermore, he was sufficiently confident in his assessment such

that he communicated the issue to plaintiffs, outlined a time frame as to when amended tax returns would be filed, and was prepared to spend up to a year to prepare the appropriate documents. Once Stuart communicated his knowledge to plaintiffs, they clearly acquired the obligation to inquire further, starting the clock on the applicable statute of limitations. The inquiry itself commenced when plaintiffs authorized and ordered Stuart to further investigate the depreciation errors.

We are not holding that the statute of limitations would trigger in every case once an accountant merely notifies a plaintiff of a possible previous accounting error that caused damages. Because the established standard is measured by a "reasonable belief" and the "obligation to inquire" (see *Dancor International, Ltd.*, 288 Ill. App. 3d at 673), an accountant informing a plaintiff of an error based on mere suspicions or speculation, for example, would be insufficient to trigger the statute of limitations. However, even if we were to assume in this case that the statute of limitations did not trigger on November 11, 2003, plaintiffs must be charged, at the latest, with a reasonable belief of any overpayment by September 11, 2004, when an amended tax return was filed for Sal's Holding Company. The record indicates all relevant depreciation calculations for the related entities were made prior to the filing of that amended tax return, and that, by then, it was plainly obvious there was a tax overpayment. In other words, under this assumption, the very inquiry that plaintiffs would be obligated to make which would trigger the statute of limitations would essentially be over at that point. Accordingly, we find that the statute of limitations expired at the latest by September 11, 2006, but most likely by November 11, 2005. Plaintiffs' complaint was filed after both dates, and accordingly, we find that the circuit court properly

dismissed plaintiffs' complaint.

Nevertheless, plaintiffs urge us to draw analogies to attorney malpractice case law in finding that their injury was not realized until the IRS approved their tax return. Although we have largely disposed of plaintiffs' contention in our discussion above, we will address this argument for the sake of providing a comprehensive analysis of the issue. Plaintiffs rely heavily upon *Warnock v. Karm Winand & Patterson*, which states:

"The fact that the attorney may have breached his duty of care is not, in itself, sufficient to sustain the client's cause of action; on the contrary, even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client. *Warnock v. Karm Winand & Patterson*, 376 Ill. App. 3d 364, 368 (2007).

In *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, which *Warnock* cited with approval, this court held that "a cause of action for legal malpractice does not accrue until a plaintiff discovers, or within a reasonable time should discover, his injury and incurs damages directly attributable to counsel's neglect." *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349, 353 (1998). *Lucey* further noted that a cause of action for legal malpractice "will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." *Lucey*, 301 Ill. App. 3d at 356. From this, plaintiffs argue that their actual damages were not realized until the IRS sent the first refund check to them.

In order to properly address plaintiffs' analogy, we must first briefly discuss the facts of

the relevant legal malpractice cases. In *Warnock*, the plaintiffs were sellers attempting to close on a real estate sale; however, the buyer was having difficulties in obtaining sufficient financing. The defendant law firm drafted a series of letter agreements on behalf of the sellers which extended the closing date, contained liquidated damages clauses, and reserved the sellers' legal and equitable rights. The buyer was not able to close and the sellers retained the money in escrow pursuant to the liquidated damages clauses. However, a lawsuit was brought by the buyer against the sellers which resulted in a determination that the liquidated damages clauses drafted by the defendant law firm were unenforceable and the sellers were not entitled to the money in escrow. The sellers subsequently brought a legal malpractice suit against the defendant law firm which drafted the letters. This court held that the statute of limitations did not begin to run until the circuit court's ultimate determination in the buyer's lawsuit that the letter agreements were unenforceable, as opposed to the initiation of the buyer's lawsuit, because at that time, there were no actionable damages. *Warnock*, 376 Ill. App. 3d at 371.

In *Lucey*, the plaintiff consulted a law firm to determine whether he could solicit his former employer's clients. His employer filed a lawsuit against the plaintiff, and while that action was pending, the plaintiff filed a legal malpractice claim against the law firm he consulted. This court held that, under the circumstances, the plaintiff's damages were speculative as it was not clear that he had been injured as the result of professional negligence. *Lucey*, 301 Ill. App. 3d at 358.

While we believe *Warnock* and *Lucey* were correctly decided, plaintiffs' attempts to draw an analogy between those cases and the case at bar must fail. The preceding discussions of

11

accounting and legal malpractice cases reveal that the overarching principle relevant to this discussion is that actual damages occurred and are reasonably ascertainable. Therefore, legal malpractice cases generally deal with instances similar to a tax deficiency case, that is, where negligent conduct is suspected before actual damages (the tax deficiency or adverse judgment) occur and are ascertainable. On the other hand, we believe that medical malpractice cases would be more similar to tax overpayment cases, where actual damages (the tax overpayment or bodily injury) typically occur before the related negligent conduct is suspected. Furthermore, one could contemplate instances where the IRS might reject an amended tax return on technical or procedural grounds, and yet as a factual matter, a taxpayer has nevertheless overpaid taxes and suffered actual damages due to accounting malpractice. Accordingly, we reject plaintiffs' argument that we must adopt principles similar to those in legal malpractice cases in circumstances where a taxpayer has overpaid taxes due to accounting malpractice.

Plaintiffs last contend that the circuit court erred in granting defendant's motion to dismiss because whether a party has sufficient knowledge to trigger the statute of limitations is a question of fact. As established above, however, a motion to dismiss under section 2-619 enables the court to dismiss the complaint after considering issues of law or easily proved issues of fact. *MC Baldwin Financial Co.*, 364 Ill. App. 3d at 22. Furthermore, the trial court may consider pleadings, depositions, and affidavits when ruling on such a motion. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004).

In the case at bar, the record contains deposition testimony that in November 2003, it was determined that defendant's depreciation calculations were inconsistent and were based on an

erroneously low depreciation basis, which would result in a tax overpayment. That testimony is corroborated by a memo dated November 11, 2003, sent to Yvonne DiMucci, the president and/or trustee of the various entities that plaintiffs are comprised of. Furthermore, Stuart testified in his deposition that by September 8, 2004, it was "obvious" depreciation was miscalculated by defendant and that the filing of plaintiff's amended tax return on September 11, 2004, required calculations of all the incorrect depreciation figures of plaintiffs' related entities. These facts are not in dispute. Furthermore, as stated above, even if we were to assume the latest possible date that the statute of limitations could possibly trigger under the undisputed facts established by the record, the statute of limitations would have already expired by the time plaintiffs filed their complaint. Accordingly, we find that the circuit court did not err here.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

1- 09-0695

REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each Case)

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | SK PARTNERS I, LP, SK PARTNERS II, LP, )<br>SK PARTNERS III, LP, SK PARTNERS IV, LP, )<br>and SAL'S HOLDING COMPANY, )<br>    )<br>        Plaintiffs-Appellants, )<br>    )<br>            v. )<br>    )<br>METRO CONSULTANTS, INC., )<br>    )<br>        Defendant-Appellee. ) |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. 1-09-0695<br>Appellate Court of Illinois<br>First District, FOURTH Division<br><br>February 17, 2011<br>(Give month, day and year) |
| JUSTICES | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Gallagher, P.J., and Pucinski, J., concurred. |
| APPEAL from the Circuit Ct. of Cook County. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>The Honorable Allen S. Goldberg, Judge Presiding. |

14

1- 09-0695

| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorneys for **Plaintiffs/Appellants:**<br>Garelli & Grogan<br>Amy Galvin Grogan<br>340 W. Butterfield Rd., Suite 2A<br>Elmhurst, IL 60126<br>630.833.5533<br><br>Attorneys for **Defendant/Appellee**:<br>Terrance R. Hyten<br>120 W. Golf Rd., Suite 112<br>Schaumburg, IL 60195<br>815.519.3923 |
|---|---|