# Illinois Official Reports

## Appellate Court

*Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989

| | |
|---|---|
| Appellate Court Caption | JAMES JANOUSEK, Individually and on Behalf of Bureaus Investment Group, LLC, Plaintiff-Appellant, v. KATTEN MUCHIN ROSENMAN LLP and HOWARD M. RICHARD, Defendants-Appellees. |
| District & No. | First District, Second Division <br> Docket No. 1-14-2989 |
| Filed | October 27, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-7439; the Hon. John C. Griffin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas Kanyock, Andrew R. Schwartz, and Karen I. Jeffreys, all of Schwartz & Kanyock, LLC, of Chicago, for appellant. <br><br> Timothy J. Patenode, John F. Anzelc, and Evan B. Elsner, all of Katten Muchin Rosenman LLP, of Chicago, for appellees. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pierce and Justice Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1 At issue is when the two year statute of limitations period, which applies to claims against lawyers arising out of the performance of their professional services, had begun to run. Plaintiff James Janousek sued a law firm and one of its lawyers alleging aiding and abetting of a client's breach of fiduciary duties owed to him. On defendants' motion for summary judgment, the court held that, under the discovery rule, Janousek knew more than two years before he filed his complaint against defendants that he had been wrongfully injured by his former business associates, thereby triggering the statute of limitations. We affirm. On these facts Janousek has failed to timely file his complaint.

¶ 2                                                    BACKGROUND

¶ 3 In 1999, James Janousek, together with Burton and Michael Slotky, formed Bureaus Investment Group LLC (BIG), an Illinois member-managed limited liability company to purchase delinquent debt accounts. The Slotkys also named Janousek president of The Bureaus, Inc., a debt collection agency that serviced BIG's accounts. Howard M. Richard, an attorney at Katten Muchin Rosenman LLP, signed and filed BIG's articles of organization. Fast forward eight years, and the relationship between Janousek and the Slotkys had so far deteriorated that on October 1, 2007, the Slotkys terminated Janousek's employment at The Bureaus. Janousek contends that after his termination, the Slotkys "froze" him out of BIG by refusing to allow him to participate in management or control of BIG or to access current financial information pertaining to BIG and its accounts. Janousek further contends that less than a month after terminating him, the Slotkys formed another debt-purchasing entity, Bureaus Investment Group III, LLC (BIG III). Janousek alleges that since October 2007, the Slotkys, through BIG III, have been purchasing debt pools, misappropriating BIG's opportunities, and competing with BIG.

¶ 4 On June 19, 2009, Janousek's attorney sent a letter to the Slotkys and BIG stating "[w]e have spent a considerable amount of time with James Janousek investigating the circumstances surrounding what has transpired with The Bureaus Inc. and its related entities *** since the actions committed by you and your father in October 2007." The letter warned that if the Slotkys did not purchase all of Janousek's interests in BIG and compensate him "for the harm you wrought," he would file a lawsuit by July 7 and warned the Slotkys not to use BIG's attorneys or funds in defending the suit.

¶ 5 The Slotkys did not comply with Janousek's demands. On July 7, 2009, Janousek made good on his threat and filed a complaint alleging the Slotkys, BIG, and others breached their fiduciary duties by competing with and usurping opportunities from BIG, as well as acting unfairly toward Janousek in conducting BIG's business. (That case remains pending in the circuit court.) Katten filed an appearance in the BIG litigation on behalf of all defendants, and Janousek moved to disqualify Katten from representing BIG, which was granted. Katten and Richard, however, continued to represent the Slotkys. (Burton Slotky died in November 2014 and Michael Slotky is not a party to this case.)

¶ 6 Nearly three years passed before Janousek, individually and on behalf of BIG, filed a two-count complaint against Katten and Richard, alleging they aided and abetted the Slotkys in

breaching their fiduciary duties. In his complaint, filed on July 2, 2012, Janousek alleged, in part, that in 2007, Katten and Richard: (1) advised the Slotkys on freezing Janousek out of the management and ownership of BIG, (2) advised the Slotkys to form BIG III, a competing debt-purchasing entity, to exclude Janousek from profits, (3) assisted the Slotkys in forming BIG III and advised them regarding BIG III's relationships with banks and other financial institutions, (4) advised and assisted the Slotkys in converting BIG investors into BIG III investors, and (5) advised and permitted the Slotkys to allow BIG to pay for their representation and advice.

¶ 7    On February 2, 2013, Katten and Richard filed their answers and affirmative defenses. Sixteen months later, on June 5, 2014, defendants filed a motion for summary judgment on its fourth affirmative defense, that the two year statute of limitations under section 13-214.3 of the Code of Civil Procedure (Code) (735 ILCS 5/13-214.3 (West 2012)) barred Janousek's lawsuit. Defendants contended that Janousek was on "inquiry notice" of his injury and its cause on July 7, 2009, the date he filed the underlying lawsuit against the Slotkys, but did not file his complaint against defendants until almost three years later.

¶ 8    Janousek responded that he could not have been on inquiry notice based on a suspicion that Katten had aided and abetted the Slotkys in breaching their fiduciary duties. He further asserted that the limitations period did not begin until 2011, because he did not learn of defendants' substantial assistance in the Slotkys' breaches of their fiduciary duties until the defendants, on behalf of the Slotkys, produced hundreds of pages of documents in late 2010 in response to discovery requests and until the Slotkys sat for depositions in October 2011. After argument, the circuit court granted the summary judgment motion. The court stated "I looked at the two complaints and compared them. *** [A]iding and abetting [is] something that's related to this underlying complaint in such a way that it establishes the requisite knowledge to trigger the beginning of the statute of limitations. I don't think diligence comes into play, so I'm going to grant the motion for summary judgment on the statute of limitations."

¶ 9                                    ANALYSIS
¶ 10                              Statute of Limitations
¶ 11    Janousek contends the circuit court erred in granting summary judgment because, although he suspected defendants of wrongdoing, a reasonable jury could conclude he did not know of their wrongdoing until after uncovering it through discovery in the underlying lawsuit and that he acted diligently in discovering the wrongdoing, particularly in light of defendants' refusal to turn over documents by claiming attorney-client privilege. We review the trial court's decision to grant summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 12    Section 13-214.3(b) of the Code states that an action for damages based on tort, contract, or otherwise against an attorney arising out of an act or omission in the performance of professional services "must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2012). Although this provision most frequently applies to cases filed by clients against their own attorney, in *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, our supreme court held that it applies to any claim concerning an attorney's professional services and not just cases where the attorney rendered services to the plaintiff.

¶ 13        Section 13-214.3(b) incorporates the discovery rule, "which delays commencement of the statute of limitations until the plaintiff knew or reasonably should have known of the injury and that it may have been wrongfully caused." *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 672 (1997). Significantly, "under the discovery rule, a statute of limitations may run despite the *lack* of actual knowledge of negligent conduct." (Emphasis in original.) *SK Partners I, LP v. Metro Consultants, Inc.*, 408 Ill. App. 3d 127, 130 (2011). A statute of limitations begins to run when the purportedly injured party "has a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue." *Dancor*, 288 Ill. App. 3d at 673. Knowledge that an injury has been wrongfully caused "does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action." (Emphasis and internal quotation marks omitted.) *Castello v. Kalis*, 352 Ill. App. 3d 736, 744 (2004). A person knows or reasonably should know an injury is "wrongfully caused" when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct had occurred. *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004, 1011 (2002). Under well settled law, once a party knows or reasonably should know both of the injury and that it was wrongfully caused, "the burden is upon the injured person to inquire further as to the existence of a cause of action." (Internal quotation marks omitted.) *Castello*, 352 Ill. App. 3d at 745. When a party knew or reasonably should have known his or her injury was wrongfully caused raises a question of fact, unless only one conclusion can be drawn at some particular point from undisputed facts. *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 169 (1981).

¶ 14        Janousek contends that although he knew of his injury and may have suspected by July 2010 that defendants played a role, mere suspicion, while investigating whether a cause of action exists, does not affect the statute of limitations. For support, Janousek relies on *LaManna v. G.D. Searle & Co.*, 204 Ill. App. 3d 211 (1990) and *Young v. McKiegue*, 303 Ill. App. 3d 380 (1999). In *LaManna*, the plaintiff alleged she became infertile because of an infection caused by defendant's contraceptive device. In reversing the trial court's grant of summary judgment in defendant's favor, this court held that the statute of limitations begins to run at the point when the party reasonably should have known that an injury was wrongfully caused and not when a party is suspicious or attempts to discover whether the injury is wrongfully caused. *LaManna*, 204 Ill. App. 3d at 218.

¶ 15        Janousek insists that, as in *LaManna*, he only suspected that defendants may have contributed to his injury by aiding and abetting the Slotkys in breaching their fiduciary duties and did not know for certain their role in aiding and abetting the Slotkys until late 2010 or early 2011, after engaging in discovery in the underlying lawsuit. We disagree with Janousek's characterization of the decision. In *LaManna*, the plaintiff was not investigating what caused her wrongful injury, but whether she was indeed injured and whether any wrongful cause existed. It was possible the plaintiff was not infertile, as one doctor told her, or that the cause of her infertility involved something other than the contraceptive device. Conversely, Janousek believed no later than July 7, 2009, and likely sooner, that the Slotkys breached their fiduciary duties and any injury he suffered, namely the lost profits going to BIG III rather than BIG, directly resulted from the breach of fiduciary duties.

¶ 16        Similarly, *Young v. McKiegue*, 303 Ill. App. 3d 380 (1999), fails to support Janousek's argument because there, the statute of limitations tolled while the plaintiff investigated

whether her injury–her husband's death in the hospital–had been wrongfully caused. Until two medical experts reviewed her husband's medical records and determined that the physicians caring for her husband had deviated from the standard of care, she did not know or have reason to know that her injury was wrongfully caused. *Id.* at 389.

¶ 17     In a letter to the Slotkys dated June 19, 2009, Janousek's attorney stated that if they did not compensate Janousek for the "the harm you wrought" he would file a lawsuit by July 7. This letter shows that Janousek knew no later than June 19 that he had been wrongfully injured.

¶ 18     Next, Janousek argues, even though he knew he had been injured by the Slotkys' breach of their fiduciary duties in July 2009, the role Katten and Richard played in the Slotkys' breaches did not manifest itself until the Slotkys complied with his discovery requests in late 2010 and sat for depositions in 2011. Janousek asserts that because this second potential cause of his injury remained unknown until, at the earliest, late 2010, he timely filed his aiding and abetting complaint. Janousek cites *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, for support. In *Mitsias*, following shoulder surgery, the plaintiff experienced severe shoulder pain and doctors diagnosed chondrolysis, a condition that causes destruction of cartilage. *Id.* ¶ 6. The plaintiff sued the surgeon and the hospital where the surgery occurred, alleging medical malpractice. *Id.* ¶ 7. During the deposition of one of her physicians, the plaintiff learned, six years after her surgery, that research had uncovered a link between the pain pump used during her surgery and cartilage destruction. *Id.* ¶ 8. Plaintiff voluntarily dismissed her complaint and refiled, adding product liability claims against the pain pump manufacturer. *Id.* ¶ 10. The trial court granted the product liability defendants' motions to dismiss plaintiff's complaint as untimely, finding that the statute of limitations on the medical malpractice claim and the products liability claim started at the same time, when plaintiff knew she had been injured and that the injury had been wrongfully caused. *Id.* ¶ 14.

¶ 19     The appellate court reversed, finding that the plaintiff had not slumbered on her rights because "there is no question that plaintiff could not have known of any potential products liability cause of action against the pain pump manufacturers while the causal link between her injury and the pain pump used upon her was not scientifically discoverable. As has been discussed, our supreme court has expressed concern that plaintiffs should not be 'held to a standard of knowing the inherently unknowable.' " *Id*. ¶ 29 (quoting *Nolan*, 85 Ill. 2d at 171).

¶ 20     Janousek asserts that as in *Mitsias*, his inability to discover this second cause of his injury tolls the statute of limitations. We disagree. First, unlike in *Mitsias* where scientific research revealed a claim otherwise unknown, Janousek's claim that defendants aided and abetted the Slotkys' breach of their fiduciary duties was not "unknowable." Janousek knew that Howard Richard, whom he identified in his complaint as Burton Slotky's nephew and Michael Slotky's cousin, had represented BIG when it filed its article of incorporation in 2007, as Richard signed the document as "organizer." He also knew that Richard continued to act as the Slotkys' attorney after Janousek's employment ended and he filed his lawsuit against the Slotkys; while Janousek filed a motion to disqualify Katten from representing BIG, he did not object to Katten's continued representation of the Slotkys and BIG III. Further, Janousek knew of the formation of BIG III and could have requested a copy of the articles of incorporation from the Illinois Secretary of State, which lists Richard as the "organizer" of BIG III. Although Janousek contends that he was unable to determine defendants' role, that information was of public record. Thus, unlike the scientifically unknowable injury in *Mitsias*, Janousek's claims against defendants were knowable before July 2, 2010.

¶ 21    More importantly, as stated already, knowledge that an injury has been wrongfully caused "does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action." (Emphasis and internal quotation marks omitted.) *Castello*, 352 Ill. App. 3d at 744. Janousek knew that he had been wrongfully injured no later than July 2009, and thus, even though he may not yet have known that defendants' representation was partly responsible and that their conduct gave rise to a cause of action, the statute of limitations began to run because Janousek did have knowledge of the injury and that his injury was wrongfully caused. In short, Janousek's claims against his partners for fraud cannot be separated from a claim that defendants failed to protect him from that very same fraud.

¶ 22    *Blue Water Partners, Inc. v. Mason*, 2012 IL App (1st) 102165, and *Carlson v. Fish*, 2015 IL App (1st) 140526, are illustrative. In *Blue Water*, the plaintiffs sued their former partners alleging, among other claims, wrongful diversion of business opportunities and breach of promise. *Blue Water*, 2012 IL App (1st) 102165, ¶ 16. In short, the plaintiffs alleged that their business partners improperly formed a company to directly compete with the company plaintiff and defendants had formed earlier. *Id*. ¶ 17. The trial court ruled in defendants' favor, finding that plaintiffs extinguished their claims against defendants when both parties signed a series of documents releasing the other from all claims. *Id*. ¶ 18. Plaintiffs then sued their attorneys alleging they committed legal malpractice by assisting defendants in creating the competing company. *Id*. ¶ 23. The trial court found the legal malpractice claim time-barred because when plaintiffs signed the release they knew or should have known that defendants engaged in purportedly wrongful conduct by helping plaintiffs' former partners incorporate the competing company. *Id*. ¶ 32. In affirming the trial court, the appellate court held that the limitations period on plaintiff's claim against his lawyer began at the same time as his claim against his former partner because the two claims were inseparable. *Id*. ¶ 67.

¶ 23    In *Carlson*, the plaintiff settled a dispute with his two business partners but later decided that the settlement was inadequate and that his partners had defrauded him. *Carlson*, 2015 IL App (1st) 140526. More than two years later, the plaintiff filed a legal malpractice complaint against his lawyers for their representation in the settlement negotiations. *Id*. ¶ 17. The circuit court granted defendants' motion to dismiss on statute of limitations grounds, finding that the cause of action accrued when the plaintiff knew he had been injured and identified his former partners as the cause, an event more than two years before he filed his malpractice claim. *Id*. ¶ 19. We affirmed the dismissal. Plaintiff asserted the discovery rule suspended the statute of limitations while he was investigating whether he had a claim against his former partners. The appellate court disagreed and held that the plaintiff's knowledge that he had been injured and that the injury was wrongfully caused, even if he may not yet have known that his lawyers' representation was partly responsible or that their conduct gave rise to a legal malpractice cause of action, commenced the statute of limitations against them. *Id*. ¶ 39. The court stated that "In short, [plaintiff's] identification of one wrongful cause of his injuries initiates his limitations period as to all other causes, particularly when, as here, he claims his partners engaged in fraud and the defendants failed to protect him from fraud, those claims are inseparable." *Id*.

¶ 24    As in *Blue Water* and *Carlson*, Janousek's knowledge of a wrongful cause of his injury, namely his former associates' breach of their fiduciary duties, initiates the two year statute of limitations. Moreover, his claims against Katten and Richard and the Slotkys are uniquely intertwined and inseparable, as he claims that the former aided and abetted the latter in their

breach. Further, contrary to Janousek's contention, his diligent inquiry into the defendants' role in aiding and abetting the Slotkys' wrongdoing does not toll the statute of limitation. As noted, under the discovery rule, the limitations period begins "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981). At that point, the injured party bears the burden of inquiring further as to the existence of a cause of action. *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981). Once a plaintiff is aware of his or her wrongful injury, diligent inquiry will not provide a basis for tolling the statute of limitations. *Mitsias*, 2011 IL App (1st) 101126, ¶ 31. Thus, the statute of limitations began to run no later than July 2009, when Janousek filed his complaint against the Slotkys, more than two years before he filed his complaint against defendants.

¶ 25                                    Attorney-Client Privilege

¶ 26    Finally, Janousek suggests public policy should preclude attorneys from raising an attorney-client privilege delaying disclosure of their wrongdoing long enough to raise a statute of limitations defense. Specifically, Janousek asserts that defendants obstructed discovery by claiming that he requested documents in discovery protected by the attorney-client privilege, and then defended on the statute of limitations having expired in the interim. He contends that permitting the defendants to engage in this type of conduct will set a precedent for other attorneys and adversely affect the practice of law. And he contends that the attorney-client privilege did not benefit the Slotkys because it exposed them to liability that otherwise could have been shared by defendants.

¶ 27    The attorney-client privilege refers to a *client's* right to refuse to disclose confidential communications "between attorney and client made for the purpose of obtaining legal advice." *Genentech, Inc. v. United States International Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997). Thus, the privilege, which belongs to the client, may be asserted by an attorney on a client's behalf. The privilege precludes a client and a lawyer from being required to produce privileged communications in, for example, the discovery process. If a communication is privileged, it is absolutely privileged, regardless of need, hardship, or cost. Leah M. Christensen, *A Comparison of the Duty of Confidentiality and the Attorney-Client Privilege in the U.S. and China: Developing a Rule of Law*, 34 T. Jefferson L. Rev. 171, 176 (2011). The attorney-client privilege raises the possibility that a court may not become aware of all of the facts in a case and may actually prevent the discovery of the truth. *Id*. But that is hardly a trade-off given the centrality of the attorney-client privilege to an open and just legal system. Thus, contrary to Janousek's argument, public policy weighs in favor of protecting attorney-client communications over mandating disclosure of documents deemed by the client to be privileged.

¶ 28    Furthermore, we disagree with Janousek's contention that any purported delay in turning over documents or responding to discovery requests precluded him from uncovering the role defendants may have played in assisting the Slotkys in breaching their fiduciary duties. As noted, Janousek knew that defendants had represented BIG and the Slotkys for many years and knew by July 2009 that the Slotkys had formed BIG III, which he contends in his underlying lawsuit improperly competed with and usurped opportunities from BIG. Richard's name appeared on BIG III's articles of organization, which are of public record. Thus, although documents disclosed by the Slotkys in late 2010 and their depositions in early 2011 may have

further solidified Janousek's determination that he had a claim against defendants, he knew well before then that he had been wrongfully injured by his former business associates, which triggered the statute of limitations on his aiding and abetting claim against defendants.

¶ 29        Affirmed.