# Illinois Official Reports

## Appellate Court

---

### *Scheinblum v. Schain Banks Kenny & Schwartz, Ltd.*, 2021 IL App (1st) 200798

---

| | |
|---|---|
| Appellate Court Caption | BRIAN SCHEINBLUM and CHICAGO HOTEL PARTNERS, LLC, Plaintiffs-Appellants, v. SCHAIN BANKS KENNY & SCHWARTZ, LTD., Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>No. 1-20-0798 |
| Filed | August 6, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-L-5813; the Hon. Diane M. Shelley, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Charles Aaron Silverman, of Charles Aaron Silverman, P.C., of Skokie, for appellants.<br><br>Kimberly E. Blair, Joseph J. Stafford, and Robert F. Merlo, of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, of Chicago, for appellee. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion.<br>Justices Harris and Oden Johnson concurred in the judgment and opinion. |

¶ 1 Plaintiffs, Brian Scheinblum and Chicago Hotel Partners, LLC (CHP), appeal from the circuit court's order that granted defendant Schain Banks Kenny & Schwartz, Ltd.'s motion to dismiss plaintiffs' breach of fiduciary duty claim pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)). On appeal, plaintiffs contend that the circuit court erred when it granted defendant's motion to dismiss based on the statute of limitations. Plaintiffs argue that the statute of limitations did not begin to run until October 2017, when they had reasonable suspicion that defendant had engaged in wrongdoing that caused their damages. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND
¶ 3                                        Complaint

¶ 4 On May 29, 2019, plaintiffs Scheinblum and CHP, which was owned by Scheinblum, filed a one-count complaint against defendant for breach of fiduciary duty. Plaintiffs alleged as follows. In 2015, plaintiffs and Pittsfield Hotel Holdings (PHH) retained defendant to provide legal services involving a contract related to a planned hotel development on certain floors of a building located at 55 East Washington Street in Chicago (Pittsfield Building). Specifically, plaintiffs retained defendant to file a complaint for declaratory judgment and specific enforcement to enforce a contract against Pittsfield Development LLC (Development) and Pittsfield Residential II LLC (Residential). The contract included the following. CHP would purchase membership interests in PHH. Development and Residential would then convey floors two through nine of the Pittsfield Building to PHH, after which Development and CHP, as members of PHH, would jointly own, develop, and operate a hotel on said floors.

¶ 5 Plaintiffs' complaint for breach of fiduciary duty against defendant alleged that after plaintiffs filed the complaint for declaratory judgment and specific performance against Development and Residential, defendant negotiated a settlement agreement with the parties to the contract and oversaw the conveyance of floors two through nine of the Pittsfield Building to PHH. As part of the settlement, on June 4, 2015, quit claim deeds conveying interests in the Pittsfield Building from Development and Residential to PHH were recorded with the Cook County Recorder of Deeds. Thereafter, plaintiffs began working on developing the hotel and incurred expenses.

¶ 6 Plaintiffs further alleged that around this same time, without their knowledge, defendant was also advising another party on how to stop the development of the hotel at the Pittsfield Building. Specifically, they alleged that on or before December 2015, Anthony Casaccio, an attorney at defendant's law firm, advised Adam Lynd on how to stop plaintiffs from developing and building their hotel. Plaintiffs alleged that Casaccio advised Lynd on how to get the Pittsfield Building downzoned such that plaintiffs could never develop or operate a hotel there. Plaintiffs alleged that Casaccio sent Lynd an e-mail on December 28, 2015, which advised Lynd on how to get the Pittsfield Building downzoned. The e-mail stated as follows:

> "To summarize, you are looking for an email with respect to: Permissible use(s) of the building under the current DX-16 zoning, *i.e.* What happens if the owner wants to change floors 2-9 from the currently vacant residential use, into a hotel. Since the hotel use is permitted under the current DX-16 zoning classification, is there anything the

Alderman can do to stop someone from converting floors 2-9 to a hotel. If Sellers actually pursue construction/renovation work to convert 2-9 into a hotel, how long is the process, what else is required by the city (*i.e.* city department approvals from zoning, landmarks, etc.), what effect does that have (if any) on the remaining units in the building. What changes in the current building's use would trigger the necessity of a PD? From the information we have seen online, the city recognizes 253 dwelling units (DU), however the attached unit breakdown shows 368 unites. Please add any other questions you would like for us to answer for you. Best, Anthony V. Casaccio."

¶ 7    Plaintiffs further alleged as follows. On information and belief, before and after the date of Casaccio's e-mail, defendant advised Lynd on how to approach the local alderman to get the building downzoned in order to block the hotel development. Lynd wanted to obtain holdings in the Pittsfield Building for a significantly discounted price, and he was able to convince the alderman to downzone the Pittsfield Building. In March 2016, the Chicago City Council passed an ordinance downzoning the Pittsfield Building and effectively stopped the hotel development. Thereafter, Scheinblum met with the alderman to see about "reversing the sudden change in the zoning for the Pittsfield Building and resultant tremendous financial loss to Plaintiffs, but was rebuffed." Lynd had influenced the alderman by giving him a campaign donation, and the alderman followed the exact practice that defendant gave Lynd in order to stop plaintiffs from building the hotel. Lynd was unsuccessful in purchasing floors for himself at the Pittsfield Building, but he convinced the alderman to downzone the building and thwart plaintiffs from developing their hotel. It was defendant's legal counsel to Lynd that caused the downzoning of the building.

¶ 8    Plaintiffs alleged that its partners, Development, Residential, and PHH had to sue the City of Chicago in federal court and that the downzoning caused the hotel development to fail and caused "financial devastation." Before the downzoning ordinance was enacted, all income generating tenants were removed from floors two through nine and several floors were demolished in the building to prepare for the hotel development. In March 2017, Development filed for Chapter 11 bankruptcy, after which all of the interests of the Pittsfield entities in the Pittsfield Building, including those owned by PHH (floors two through nine), were sold in August 2017. Plaintiffs alleged that while they were dealing primarily with two other attorneys other than Casaccio at defendant's law firm, they retained the entire law firm. They alleged it was a conflict of interest for defendant to advise Lynd on how to stop the hotel development after they had retained defendant to effectuate the hotel development. Plaintiffs alleged that defendant's conduct violated the Illinois Rules of Professional Conduct of 2010.

¶ 9    Defendant's Section 2-619 Motion to Dismiss Plaintiffs' Complaint

¶ 10    Defendant filed a section 2-619 motion to dismiss plaintiffs' breach of fiduciary duty claim, arguing, *inter alia*, that the claim was barred by the two-year statute of limitations for legal malpractice claims. It asserted that plaintiffs knew or should have known of its alleged damages, which was the lost profits related to the planned development, when the downzoning ordinance was passed by the Chicago City Council on March 16, 2016. Defendant argued that plaintiffs did not file their complaint until over two years later on May 29, 2019. Defendant argued, in the alternative, that plaintiffs knew or should have known of their alleged damages on March 13, 2017, when the Pittsfield entities filed the complaint against the City of Chicago in federal court.

¶ 11    Defendant attached to its motion to dismiss a complaint filed by Development, Residential, and PHH against the City of Chicago in the United States District Court on March 13, 2017, which asserted claims based on the downzoning of the Pittsfield Building. The complaint alleged, *inter alia*, as follows. Development, Residential, and PHH's claims arose out of the "wrongful down zoning of real property" they owned, which was initiated and enacted by the City of Chicago. In May 2014, Development, Residential, and PHH relied on the hotel use allowed under the current zoning designation and arranged to convert floors two through nine of the building into a hotel, which included receiving a building permit from the City of Chicago in December 2015 to construct the hotel. In August 2015, Development, Residential, and PHH entered into a contract to sell the properties they owned at the Pittsfield Building to Adam David Partners 1, LLC, of which Lynd was a representative. Lynd expressed his interest in converting the building to a wholly residential use, and the parties ultimately failed to close on the contract. Lynd met with the alderman in that ward and expressed his interest in converting the whole building to residential. Thereafter, the alderman sponsored legislation to change the zoning of the building to a residential use district. The zoning change was approved by the City of Chicago on March 16, 2016, and only affected the Pittsfield Building, which was illegal spot zoning. The City acted arbitrarily and with malice when it enacted the downzoning ordinance, and the ordinance failed to advance any legitimate government interests. Following the enactment of the zoning ordinance, Development, Residential, and PHH were denied all rights to develop the hotel in the building, and it was no longer feasible to develop a hotel in the building. They were stuck owning properties that generated expenses without income. The downzoning ordinance effectively served to deny plaintiffs all viable economic uses of the properties, which became burdensome liabilities, and Development had to file for Chapter 11 bankruptcy.

¶ 12    The circuit court granted defendant's motion to dismiss based on the statute of limitations but allowed plaintiffs to file an amended complaint, noting that plaintiffs did not plead facts to invoke the discovery rule.

¶ 13                        Plaintiffs' Amended Complaint

¶ 14    Plaintiffs filed a verified amended complaint that alleged similar allegations as their original complaint. Plaintiffs added the following allegations. Plaintiffs did not discover defendant's breach of duty or know about Casaccio's December 2015 e-mail or any assistance given to Lynd until October 16, 2017. The principal of Development and Residential obtained Casaccio's December 2015 e-mail on October 16, 2017, as part of discovery production in another case in the chancery division in the circuit court of Cook County.

¶ 15            Defendant's Section 2-619 Motion to Dismiss Plaintiffs'
                                Amended Complaint

¶ 16    Defendant filed a section 2-619 motion to dismiss plaintiffs' first amended complaint and argued again that plaintiffs' claim for breach of fiduciary duty was barred by the two-year statute of limitations. Defendant continued to argue that plaintiffs knew or should have known of their alleged damages when the downzoning ordinance was passed on March 16, 2016, and that, alternatively, plaintiffs knew or should have known of their alleged damages when the Pittsfield entities filed the federal complaint against the City of Chicago on March 13, 2017. Defendant asserted that plaintiffs admitted in their complaint that, after the downzoning

ordinance was passed on March 16, 2016, they met with the alderman and discussed the "tremendous financial loss" and that the meeting demonstrated that plaintiffs knew of their injury as of March 16, 2016.

¶ 17    In response, plaintiffs argued, *inter alia*, that "it is the realized injury to the client, not the attorney's misapplication of the expertise, which marks the point in time for measuring complaint with a statute of limitation period." Plaintiffs asserted that in October 2017, they became aware of Casaccio's December 28, 2015, e-mail only through discovery in another case and they could only have known about the cause of the injures when they received the e-mail in October 2017.

¶ 18    In reply, defendant argued that once plaintiffs knew of their injury and that it was wrongfully caused, it was their burden to inquire further as to the existence of a cause of action and that neither the first amended complaint nor response to the motion to dismiss demonstrated that plaintiffs were diligent or inquired at all. Defendant asserted that the federal action and other publicly available records showed that plaintiffs could have obtained information about Lynd's involvement had they inquired. Defendant attached to its reply a campaign donation from "The Lynd Company" to the alderman in December 2015 and a *lis pedens* notice and a complaint filed in the chancery division by Adam David Partners 1, LLC, against the Pittsfield entities with respect to the Pittsfield Building. Defendant argued that these exhibits showed Lynd and his representatives' interest in the Pittsfield Building and his potential involvement in the downzoning ordinance through the alderman. Defendant argued that plaintiffs had knowledge of their injury and that it was wrongfully caused by March 13, 2017, and that their lack of diligence or inquiry did not support a tolling of the statute of limitations.

¶ 19    The court granted defendant's motion to dismiss based on the statute of limitations. In doing so, it stated as follows:

> "Therefore, the standard that this court must apply is not whether plaintiffs knew of the existence of a cause of action against the law firm, but rather, whether they had knowledge that an injury was wrongfully caused when they discovered the downzoning that was sufficient to put a reasonable person on inquiry to determine whether actionable conduct was involved. Plaintiffs argue that there was no reason for them to know of the relationship between Mr. Lynd and the law firm. Therefore, knowledge should not be inferred as a matter of law. After considering the plaintiffs' position, the court is unable to conclude that further investigation would not have revealed the relationship.
>
> ***
>
> The law is clear that each actor to potentially-tortious conduct does not need to be known before the statute begins to run. The plaintiffs believed that the downzoning was a wrongful act, and initiated legal action against the City of Chicago. Because the plaintiffs knew or should have known at the time of the downzoning both that they were injured and that the injury may have been wrongfully caused, the court must find that the limitations period commenced at that time based on the law cited by defendants. Because plaintiffs developed a reasonable belief that the downzoning was caused by wrongful conduct, they had an obligation to inquire further on that issue. The court finds that this understanding accrued in March 2016, but definitely no later than March

2017 when they filed a federal lawsuit. This claim is barred by the statute of limitations."

This appeal followed.

II. ANALYSIS

On appeal, plaintiffs contend that the circuit court erred when it granted defendant's motion to dismiss based on the statute of limitations. Plaintiffs argue that when the City of Chicago passed the downzoning ordinance in March 2016, plaintiffs had no way of knowing about defendant's involvement and nothing about the facts of the downzoning suggested to plaintiffs that they should have suspected "their own attorneys." Plaintiffs argue that in March 2017, when their partners, PHH, Development, and Residential, filed the lawsuit against the City of Chicago for passing the downzoning ordinance, plaintiffs still did not have notice of defendant's involvement and there were no facts to suggest defendant "was remotely possible for the damages." Plaintiffs assert that it would have been unreasonable to suggest that the statute of limitations began to run before October 2017 when they received Casaccio's December 2015 e-mail, which showed that defendant was working with Lynd to get the building downzoned.

In a section 2-619 motion to dismiss, a defendant admits the legal sufficiency of the plaintiff's claim but raises defects, defenses, or other affirmative matters, including the timeliness of the claim, that appear on the face of the complaint or that are established by external submissions which act to defeat the claim. *Federated Industries, Inc. v. Reisin*, 402 Ill. App. 3d 23, 27 (2010). Specifically, under section 2-619(a)(5), an action may be dismissed if it "was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). When a defendant moves to dismiss a complaint based on the statute of limitations under section 2-619, all well-pleaded facts and reasonable inferences are accepted as true for the purpose of the motion to dismiss. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 84-85 (1995). It is the defendant's burden to prove an affirmative defense based on section 2-619, and a court should only grant a motion based on this section if the record establishes that there are no genuine issues of material fact. *Federated Industries, Inc.*, 402 Ill. App. 3d at 27. We review *de novo* a circuit court's order dismissing claims based on section 2-619. *SK Partners I, LP v. Metro Consultants, Inc.*, 408 Ill. App. 3d 127, 129 (2011).

Here, the parties do not dispute that section 13-214.3(b) of the Code of Civil Procedure (735 ILCS 5/13-214.3(b) (West 2018)) applies to plaintiffs' complaint. This section "covers all manner of claims that arise from an attorney's provision of professional services, not just legal malpractice claims between a client and lawyer." *Shrock v. Ungaretti & Harris Ltd.*, 2019 IL App (1st) 181698, ¶ 48. The parties also do not dispute that the statute of limitations for plaintiffs' claim for breach of fiduciary duty under this section is two years. Section 13-214.3(b) states that an action for damages based on tort, contract, or otherwise "against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2018). The issue then becomes when the two year statute of limitations period for plaintiffs' breach of fiduciary duty claim began to run.

Section 13-214.3(b) incorporates the discovery rule, "which delays commencement of the statute of limitations until the plaintiff knows or reasonably should have known of the injury

and that it may have been wrongfully caused." *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 672 (1997). The discovery rule effectively postpones the start of the limitations period. *Id.* at 673. Under this rule, the statute of limitations begins to run when the injured party " 'has a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue.' " *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 13 (quoting *Dancor International, Ltd.*, 288 Ill. App. 3d at 673).

¶ 25    Under the discovery rule, "a statute of limitations may run despite the *lack* of actual knowledge of negligent conduct." (Emphasis in original.) *SK Partners I, LP*, 408 Ill. App. 3d at 130. Further, "[k]nowledge that an injury has been wrongfully caused 'does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action.' " *Janousek*, 2015 IL App (1st) 142989, ¶ 13 (quoting *Castello v. Kalis*, 352 Ill. App. 3d 736, 744 (2004)). Rather, "[a] person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct had occurred." *Id.* Thus, when an injured party knows or reasonably should know that it was both injured and that the injury was wrongfully caused, the burden is on the injured party to inquire further as to the existence of a cause of action. *Id.* When a plaintiff uses the discovery rule to delay the commencement of the statute of limitations, the burden is on the plaintiff to prove the date of discovery. *Dancor International, Ltd.*, 288 Ill. App. 3d at 673.

¶ 26    Generally, whether a plaintiff had the requisite knowledge under the discovery rule to know or should know of an injury is a question of fact. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 250 (1994). However, if only one conclusion can be drawn from undisputed facts, then the complaint may be properly dismissed. *Janousek*, 2015 IL App (1st) 142989, ¶ 13.

¶ 27    Here, we conclude that the two-year statute of limitations bars plaintiffs' breach of fiduciary duty claim. The record shows that plaintiffs knew of their injury and that it was wrongfully caused by March 2017, but they did not file their complaint until over two years later in May 2019. Plaintiffs' complaint demonstrates they knew they were injured in March 2016 when the downzoning ordinance was passed. Specifically, plaintiffs alleged in their complaint that when the Chicago City Council passed the ordinance in March 2016, it "effectively stopped the ongoing development of a hotel on floors 2-9 dead in its tracks" and that after the ordinance was passed Scheinblum met with the alderman "to see about reversing the sudden change in the zoning" and "resultant tremendous financial loss to Plaintiffs, but was rebuffed." Moreover, the complaint filed in federal court against the City of Chicago in March 2017 by plaintiffs' partners, PHH, Development, and Residential, shows that plaintiffs knew they were injured by the downzoning ordinance in March 2016. The federal complaint alleged that after the zoning ordinance was enacted, Development, Residential, and PHH were denied all rights to develop the hotel in the building, it was no longer feasible to develop a hotel in the building, and the downzoning ordinance effectively served to deny them all viable economic uses of the properties.

¶ 28    Further, plaintiffs knew that their injury from the downzoning ordinance was wrongfully caused by at least March 2017 when their partners Development, Residential, and PHH, of which plaintiff CHP was a member, filed the complaint against the City of Chicago in federal court. In this federal complaint, Development, Residential, and PHH expressly alleged that

their claims arose out of the "wrongful down zoning," that the City of Chicago acted with malice, and that the ordinance was "illegal spot zoning." Further, the complaint alleged that before the ordinance was passed, Lynd had met with the alderman to express his interest in converting the Pittsfield Building to residential use and that, after the meeting, the alderman sponsored legislation to change the zoning of the building to a residential use district. Accordingly, when the federal action was filed in March 2017 against the City of Chicago, plaintiffs knew they were injured from the downzoning ordinance, that the enactment of the downzoning ordinance may have been wrongful, and that Lynd may have been involved in the change. Thus, in March 2017, because plaintiffs knew that they were injured by the passing of the ordinance, that their injury was wrongfully caused, and that Lynd and the alderman were involved in the ordinance change, they had an obligation to inquire further on that issue. The statute of limitations therefore began to run by March 2017.

¶ 29    Plaintiffs assert that when they participated in bringing the lawsuit against the City of Chicago in March 2017, they "still were on no notice whatsoever of [d]efendant's involvement" and there were no facts to suggest that defendant was "remotely responsible for the damages." However, "it does not matter whether the plaintiff knows or suspects who the wrongdoer actually is" (*Shrock*, 2019 IL App (1st) 181698, ¶ 50), and as previously discussed, "[k]nowledge that an injury has been wrongly caused 'does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action' " (*Janousek*, 2015 IL App (1st) 142989, ¶ 13 (quoting *Castello*, 352 Ill. App. 3d at 744)). Rather, "[a] person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct has occurred." *Id.* Further, this court has previously stated that the "identification of one wrongful cause of [the plaintiff's] injuries initiate[d] his limitations period as to all other causes" (*Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 39) and that "once a party knows or reasonably should know both of his injury and that it was wrongfully caused, 'the burden is upon the injured person to inquire further as to the existence of a cause of action' " (*Castello*, 352 Ill. App. 3d at 745 (quoting *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981))). Here, because plaintiffs knew by March 2017 when they filed the federal lawsuit against the City of Chicago that they were injured by the downzoning, that their injury was wrongfully caused, and that Lynd was involved in the ordinance change, the statute of limitations began to run in March 2017, and it was plaintiffs' burden to inquire further as to the existence of a cause of action.

¶ 30    Accordingly, the statute of limitations for plaintiffs' breach of fiduciary duty claim commenced no later than March 2017, which was more than two years before plaintiffs filed their claim for breach of fiduciary duty against defendant. Thus, the circuit court did not err when it granted defendant's motion to dismiss plaintiffs' complaint based on the statute of limitations.

¶ 31                                III. CONCLUSION

¶ 32    Based on the foregoing, the circuit court properly granted defendant's motion to dismiss based on the statute of limitations.

¶ 33    Affirmed.