2025 IL App (1st) 250004-U

FIRST DIVISION
September 22, 2025

No. 1-25-0004

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ELIZABETH HARRINGTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 L 4884 |
| | ) | |
| SHARON MILLER, an individual, BOARD OF | ) | |
| DIRECTORS OF THE 1520 NORTH STATE PARKWAY | ) | |
| CONDOMINIUM ASSOCIATION, an Illinois | ) | |
| not-for-profit corporation, EFM, LLC, a Delaware limited | ) | |
| liability company, TOUGH, LLC, a Delaware limited | ) | |
| liability company, TIFF, LLC, a limited liability company, | ) | |
| ERIC ACHEPOHL, an individual, and SCOTT HIRSCH, | ) | |
| an individual, | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County granting defendants' motion to dismiss plaintiff's complaint; however, we vacate that portion of the judgment dismissing the complaint with prejudice because plaintiff can plead a set of facts that would entitle plaintiff to relief; therefore, the cause is remanded with directions to grant plaintiff leave to file an amended complaint.

¶ 2    Plaintiff, Elizabeth Harrington, filed a complaint for breach of contract and breach of

fiduciary duties against defendants, Sharon Miller, individually, the Board of Directors of the

1520 North State Parkway Condominium Association, an Illinois not-for-profit corporation ("the

Board"), EFM, LLC, a Delaware limited liability company, Tough, LLC, a Delaware limited liability company, TIFF, LLC, a Delaware limited liability company, Eric Achepohl, individually, and Scott Hirsch, individually. The circuit court of Cook County granted defendants' motions to dismiss the complaint based on the affirmative defense of the statute of limitations, with prejudice. For the following reasons, we affirm in part, vacate in part, and remand with directions.

¶ 3                                 BACKGROUND

¶ 4      Plaintiff is the owner of three condominium units in the 1520 North State Parkway building. The Condominium Association ("association") for the building is governed by the Board. There is in effect an "Amended and Restated Declaration of Condominium Ownership for 1520 North State Parkway and ByLaws" for the condominium (hereinafter the "declaration" and "by-laws"). The association's by-laws state that each unit owner is a member of the association and requires that each member of the Board be an owner or a designee of a corporate or other legal entity owner. Defendant Sharon Miller is the President of the Board, Eric Achepohl is the Treasurer of the Board, and Scott Hirsch is the Secretary of the Board. Plaintiff's complaint alleges that Achepohl and Hirsch are the Chief Executive Officer and Chief Financial Officer, respectively, of an organization  that manages Miller's investments and legal affairs.

¶ 5      Plaintiff's complaint alleged that prior to 2009, Miller owned one unit in the building, and between 2009 and November 2017 Miller, through legal entities, acquired every unit in the building other than plaintiff's units. The complaint alleged that the legal entities through which Miller acquired all of the other units in the building are defendants EFM, LLC, Tough, LLC, and TIFF, LLC, and that Achepohl and Hirsch acquired their positions on the Board as the legal owners of those entities on behalf of Miller. In sum, plaintiff alleged that Miller directly or

indirectly controls all of the units in the building other than plaintiff's units. (Defendants do not refute that allegation on appeal.)

¶ 6        Plaintiff alleged that in Spring 2016 defendants undertook construction work to renovate and combine the units Miller controlled. Plaintiff alleged that the construction work was "grossly defective and caused catastrophic structural damage" (which plaintiff's complaint refers to as "defects") to plaintiff's units rendering them uninhabitable, and that the "defects" "destroyed the vast majority of the value" of plaintiff's units. Plaintiff alleged, "[a]ll Defendants are responsible for the damage caused to [plaintiff's units] and the Buildings [*sic*] Common Elements as a result of the construction work and defects, but none of them has taken any action to remediate the damage or to pay for repairs and remediation." Plaintiff also alleged that "the Boards [*sic*] inaction to address any of the Defects has been ongoing and continues to this day."

¶ 7        Count I of plaintiff's complaint was for breach of contract against all defendants. Count I was based on Article XVI(1), Article XX, and Article XXIII of the declaration. The declaration is attached to plaintiff's complaint. Article XVI(1) of the declaration requires the Board to engage a corporate trustee in the event of a loss in excess of $50,000 or in the event of any loss resulting in the destruction of a major portion of one or more units "for the purpose of receiving and disbursing the insurance proceeds resulting from any loss." Article XX provides, in pertinent part, as follows:

> "No alterations of any Common Elements, or any additions or improvements
> thereto, shall be made by any Unit owner without the prior written approval of the
> Board. The Board may authorize and charge as common expenses (or in the case
> of Building Limited Common Elements or Limited Common Elements may
> charge to the Unit owner or Unit owners benefitted thereby) alterations and

improvements of and additions to, the Common Elements including the Building Limited Common Elements; provided, however, any Unit Owner may make alterations, additions or improvements within his Unit without the prior written approval of the Board, provided that they do not affect other Units or the Common Elements, but in any event, such Unit Owner shall be responsible for any damage to other Units, the Common Elements, or the Property as a result of such alterations, additions or improvements."

¶ 8    "Count 36" in plaintiff's complaint alleged that defendants, "and particularly Miller, individually," breached Article XVI and Article XX by failing to (a) seek and/or "legitimately obtain" Board approval for the construction, (b) disclose the scope of work to plaintiff, (c) remediate the defects defendants were responsible for causing, (d) tender the claim to the insurance carrier and (e) appoint a trustee to oversee remediation.

¶ 9    Article XXIII provides for a right of first refusal as to any sale or lease of a unit. Plaintiff's complaint alleged defendants, collectively, and "Miller, in particular," breached Article XXIII "by purchasing units surreptitiously and without disclosing the sale to the Board." Plaintiff further alleged that defendants breached Article XXIII by failing to (a) provide that each member of the Board shall be one of the owners, (b) stopping Miller and defendants from acquiring title to each of the other units or requiring Miller do so "in a proper and legitimate manner" and allowing "them to have more than one seat on the Board by clandestinely purchasing all the other units," and (c) engaging in self-dealing for those purposes.

¶ 10    Count II of plaintiff's complaint was for breach of fiduciary duties against "all individual defendants and the Board." Plaintiff alleged that the individual defendants all served as members of the Board and that as such defendants were obligated to perform certain duties under either the

declaration or the Illinois Condominium Act; among them to appoint a trustee to address the defects and tender the claim to the association's insurance carrier, pay all costs for maintenance and repair, provide a schedule of regular maintenance and repair and perform all necessary repairs "as were necessary to comply with the provisions of the Declaration," maintain an adequate reserve fund to address the defects and keep all owners informed of its status, and to act with good faith and loyalty in managing the association—in this instance to include "refraining from engaging in self dealing [*sic*] to purchase or permitting the purchase of the other Units." "Count 42" in plaintiff's complaint alleged defendants breached their fiduciary duties causing plaintiff damages.

¶ 11 On August 14, 2023, defendants Miller, Achepohl, Hirsch, and the Board ("the individual defendants") filed a combined motion to dismiss plaintiff's complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)).

¶ 12 First, the individual defendants' motion to dismiss argued that plaintiff's claims "are facially barred in their entirety by the pertinent statute of limitations, and accordingly should be dismissed pursuant to 735 ILCS 5/2-619(a)(5)." The individual defendants claimed that, pursuant to section 13-205 of the Code, the applicable statute of limitations for a breach of fiduciary duty claim is five years, and the applicable statute of limitations for plaintiff's "breach of contract" claim is also "the five-year limitations period of [section] 13-205 [of the Code,]" because the declaration is not a contract, and the statute of limitations applicable to written contracts (10 years) does not apply. The individual defendants argued that plaintiff's claim for breach of fiduciary duties accrued, and the statute of limitations began to run, "in the 'spring of 2016' when [the individual defendants] are alleged to have hired contractors to engage in structural work that damaged Plaintiff's unit," seven years prior to plaintiff filing the complaint. The

individual defendants argued that plaintiff's contract claim "is also based solely on [the individual defendants'] alleged actions in 2016" and is "similarly untimely under the pertinent statute of limitations."

¶ 13    The individual defendants argued that the allegations in the complaint make clear that the injuries for which plaintiff seeks damages are based on the construction damage and defendants' actions in connection therewith, and occurred immediately upon the completion of the construction work in Spring 2016. Defendants also argued that plaintiff's breach of contract claim is "based solely on Defendants' alleged actions in 2016" and is similarly untimely under a five-year statute of limitations. Therefore, defendants argued, plaintiff's breach of contract claim must also be dismissed pursuant to section 2-619(a)(5) of the Code.

¶ 14    The individual defendants also argued that count I should be dismissed pursuant to section 2-615 of the Code for failing to state a claim, and that plaintiff failed to plead any facts in support of any of defendants' alleged breaches of fiduciary duties and instead only "conclusorily alleges *** that Defendants' alleged actions constituted breaches;" nor did plaintiff plead any specific damages from the alleged breaches. Therefore, defendants argued, count II should also be dismissed pursuant to section 2-615 of the Code.

¶ 15    On August 14, 2023, EFM, LLC, Tough, LLC, and TIFF, LLC, ("the LLC defendants") joined in the individual defendants' motion to dismiss plaintiff's complaint and separately moved to dismiss count I of the complaint, the sole count against the LLC defendants, on the independent grounds that "(1) the Condo Declaration is not a contract between unit owners and does not confer a private right of enforcement by one unit owner against another; and (2) Plaintiff waived her right to sue the LLC Defendants for damage to her unit because such damage was covered by her casualty insurance."

¶ 16    On October 19, 2023, plaintiff filed a response to all defendants' motions to dismiss. Plaintiff's response distinguished between "non-construction damages" and "construction damages." Plaintiff argued that plaintiff's "non-construction damages" resulted from breach of the declaration in the following ways:

a.   failing to obtain proper Board approval for this construction,

b.   failing to disclose it,

c.   improperly purchasing units,

d.   failing to properly maintain an adequate reserve fund to maintain the property and common areas, and

e.   failing to provide a schedule of regular maintenance of the property and common areas.

Plaintiff argued that these alleged breaches of the declaration are alleged in paragraphs 36 and 42 of plaintiff's complaint (which are in count I and count II, respectively).

¶ 17    Plaintiff argued that plaintiff's "construction damages" resulted from "the negligence, defects and damages that occurred during Defendants' construction project." Plaintiff argued that the complaint alleges "construction damages" based on the following conduct:

a.   Defendants' failure to tender plaintiff's damages claim to the association's insurance carrier,

b.   failing to appoint a trustee to oversee remediation work,

c.   failing to properly maintain the building to repair or prevent the alleged defective conditions.

¶ 18    In support of the response to defendants' motions to dismiss plaintiff submitted an affidavit in which plaintiff averred, in pertinent part, as follows:

> "3. The damage caused to my unit included significant cracks, sagging, and partial collapse to my unit rendering it, in my opinion to be uninhabitable.

There was also similar kinds of damage to the common areas adjacent to my unit including, but not limited to, exterior walls and windows.

4. In January of 2017, I informed Ms. Miller of the extensive damage to my unit. Sharon Miller represented to me that the Defendants would respond to and remediate the damages that they caused. Attached hereto as Exhibit 1 is the letter that Ms. Miller sent me in this regard. I was well aware at this time that Article XX of the Declaration made it clear that the Unit Owner performing construction work in the building that causes damages "shall be responsible for any damage to other Units, the Common Elements, or the Property as a result of such alterations, additions or improvements." Thus, I believed that Ms. Miller would comply with her representations and obligations under the Declaration, and she continued to lead me to believe so until on about March of 2022.

5. In March of 2022, the Defendants had no efforts to repair or otherwise compensate me for these damages. Thus, on or about that time I retained the law firm of Loftus and Eisenberg, and Loftus, who started communicating with Defendants Insurance carrier, CNA. (See the demand letter, attached hereto as Exhibit 2). However, the Defendants, and the Defendants [*sic*] insurance carriers have not, to this day, paid for any damages, nor have they agreed to make any repairs to my unit or the common areas.

6. March of 2022 is also the time when I first learned that the Board did not set aside reserve funds for common area maintenance in the building, or any of my damages from Ms [*sic*] Miller's construction work."

¶ 19 Plaintiff's response to defendants' motions to dismiss argued that the complaint alleged sufficient facts to adequately plead a claim for breach of contract and breach of fiduciary duties against the individual defendants and the LLC defendants. Plaintiff argued that Article XX of the declaration makes Miller liable as a unit owner for undertaking the negligent construction work. Plaintiff also argued that the LLC defendants can be sued a members of the Board for breach of the declaration. Plaintiff requested leave to amend the complaint should the trial court find that any counts were deficiently pleaded. Next, plaintiff argued that defendants' claim that plaintiff's complaint is time-barred fails because the ten-year statute of limitations for written contracts applies to most of the allegations in the complaint and for those allegations to which the five-year statute of limitations does apply, "the Defendants are precluded by estoppel given [Miller's] representations to remediate the damage her work caused." Plaintiff argued that the declaration "is both a contract and a covenant running with the land." Plaintiff also argued that the discovery rule applies to plaintiff's non-construction damages claims; and, regardless, the motions to dismiss do not "address whether the Non-Construction damage claims are even barred by a statute of limitations." Alternatively, plaintiff's response argued that if the complaint does not sufficiently plead estoppel plaintiff should be granted leave to amend. The individual defendants replied, in part, that plaintiff's affidavit confirms that plaintiff's damages occurred in Spring 2016 and that plaintiff was aware of those damages "no later than January 2017."

¶ 20 On December 21, 2023, following a hearing, the trial court entered a written order granting defendants' motions to dismiss with prejudice "on limitations grounds." The trial court's written order did not address plaintiff's requests to amend the complaint.

¶ 21 This appeal followed.

¶ 22 ANALYSIS

¶ 23    This is an appeal of a judgment granting a motion to dismiss a complaint with prejudice based on the affirmative defense of the statute of limitations. "[A motion pursuant to section 2-619 of the Code of Civil Procedure (Code)] admits the legal sufficiency of the complaint but raises *** affirmative matter appearing on the face of the complaint which defeat the plaintiff's claim. [Citation.]" *Portfolio Acquisitions, L.L.C. v. Feltman*, 391 Ill. App. 3d 642, 646-47 (2009). "[S]ection 2-619(a) of the Code *** allows for the involuntary dismissal of an action that 'was not commenced within the time limited by law.' (Internal quotation marks omitted.) *Carlson v. Fish,* 2015 IL App (1st) 140526, ¶ 22 (quoting 735 ILCS 5/2-619(a)(5) (West 2012))." *Klancir v. BNSF Ry. Co.*, 2015 IL App (1st) 143437, ¶ 15. "It is the defendant's burden to prove an affirmative defense based on section 2-619, and a court should only grant a motion based on this section if the record establishes that there are no genuine issues of material fact." *Scheinblum v. Schain Banks Kenny & Schwartz, Limited*, 2021 IL App (1st) 200798, ¶ 22. "Whether a cause of action was properly dismissed under section 2–619(a)(5) of the Code based on the statute of limitations is a matter we review *de novo.*" (Internal quotation marks and citations omitted.) *Klancir*, 2015 IL App (1st) 143437, ¶ 15.

¶ 24    The trial court dismissed the complaint with prejudice, denying (or ignoring) plaintiff's requests to amend the complaint. " [A] cause of action should not be dismissed with prejudice unless it is clear that no set of facts can be proved under the pleading which would entitle the plaintiff to relief. [Citation.]" (Internal quotation marks omitted.) *Peters v. Riggs*, 2015 IL App (4th) 140043, ¶ 59. Similarly, "[t]he trial court's denial of a motion to amend a complaint is a matter of discretion and a reviewing court will not reverse that determination absent an abuse of discretion." *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 41. When a party requests leave to file an amended complaint, even to correct defects

in the complaint noted by the trial court, the failure to submit a proposed amended complaint for the trial court to consider can result in forfeiture of the issue for appeal. *Porada v. Lavelle*, 2018 IL App (1st) 171818, ¶ 19.

¶ 25    Defendants also moved to dismiss plaintiff's complaint pursuant to section 2-615 of the Code for failing to adequately state a claim. "A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *** A cause of action should not be dismissed pursuant to this section unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. Our review is *de novo*." (Internal citations omitted.) *RSA Properties Mission Hills, P.C. v. Mission Hills Homeowners Ass'n*, 2024 IL App (1st) 231526, ¶ 20.

¶ 26    "Under either section of the Code, a court determines the legal sufficiency of a complaint by taking as true all well-pleaded facts and construing all reasonable inferences from those facts in favor of the plaintiff." *Reyes v. Walker*, 358 Ill. App. 3d 1122, 1124 (2005). Further, "in reviewing a motion to dismiss pursuant to either section 2-615 or 2-619 of the Code, we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct." *Zibrat v. City of Chicago*, 2025 IL App (1st) 241273, ¶ 34.

¶ 27                              A. Sufficiency of the Complaint

¶ 28    Plaintiff's first argument on appeal is that the complaint adequately alleged the "non-construction claims," which are contained in both the count for breach of contract and the count for breach of fiduciary duties. However, on appeal defendants argued that "the circuit court did not address Defendants' arguments for dismissal based on Section 2-615. [Citation.] Because that issue was not part of the circuit court's ruling and dismissal order, Plaintiff's present arguments against dismissal based on Section 2-615 [citation] are not properly before this

Court." We also note that the trial court did not address the LLC defendants' alternative argument that count I should be dismissed pursuant to section 2-619 because "the alleged property damage about which plaintiff complains was covered by insurance." On appeal, no defendants have made any argument or cited any authority attacking the legal sufficiency of the allegations in plaintiff's complaint or in support of finding plaintiff's claims barred because they were covered by insurance. Therefore, defendants have forfeited those arguments. *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010) ("this court has repeatedly held that the failure to argue a point in the *** opening brief results in forfeiture of the issue. [Citations.] Both argument and citation to relevant authority are required."). Accordingly, we focus our attention on the motions to dismiss based on the alleged expiration of the statute of limitations prior to the filing of the complaint.

¶ 29                          B. Forfeiture of Statute of Limitations Defense

¶ 30    We first address plaintiff's argument that defendants "only sought to dismiss those Non-Construction Claims based on a [2-615] motion." The individual defendants' motion to dismiss specifically argued that "the five-year limitations period of 13-205 is applicable to Plaintiff's breach of 'contract' claim based on the Building condominium declarations. *** Accordingly, as Plaintiff's contract claim is also based solely on Defendants' alleged actions in 2016, it is similarly untimely under the pertinent statute of limitations and must be dismissed under 2-619(a)(5)." From the foregoing we find that defendants did raise a statute of limitations defense to plaintiff's "non-construction claims" based on the declaration.

¶ 31       C. Estoppel to Assert Statute of Limitations Defense—Construction Claims

¶ 32    Plaintiff argues that defendants should be estopped from asserting the statute of limitations as a defense to plaintiff's construction-damages claims based on Miller's alleged

promise and contractual obligation to repair the structural damage. We note that in plaintiff's opening brief, plaintiff does not raise this argument in support of allowing plaintiff's "non-construction claims" to proceed; plaintiff only argues that the statute of limitations does not require dismissal of the construction-damages claims due to estoppel. Plaintiff argues the affidavit in support of the response to defendants' motions to dismiss raised an issue of fact with regard to estoppel. Plaintiff relies on the following averments in plaintiff's affidavit:

"4. In January of 2017, I informed Ms. Miller of the extensive damage to my unit. Sharon Miller represented to me that the Defendants would respond to and remediate the damages that they caused. Attached hereto as Exhibit 1 is the letter that Ms. Miller sent me in this regard. I was well aware at this time that Article XX of the Declaration made it clear that the Unit Owner performing construction work in the building that causes damages 'shall be responsible for any damage to other Units, the Common Elements, or the Property as a result of such alterations, additions or improvements.' Thus, I believed that Ms. Miller would comply with her representations and obligations under the Declaration, and she continued to lead me to believe so until on about March of 2022.

5. In March of 2022, the Defendants had no efforts to repair or otherwise compensate me for these damages. Thus, on or about that time I retained the law firm of Loftus and Eisenberg, and Loftus, who started communicating with Defendants Insurance carrier, CNA. (See the demand letter, attached hereto as Exhibit 2). However, the Defendants, and the Defendants insurance carriers have not, to this day, paid for any damages, nor have they agreed to make any repairs to my unit or the common areas."

Additionally, plaintiff attached to the affidavit a photograph of an email that appears to be from Miller in response to an email from plaintiff in which Miller wrote, "Hi Elizabeth. Sorry you have had these problems. I will talk with Jim and figure out the next steps."

¶ 33    In support of the estoppel argument plaintiff relies on *Senior Housing, Inc. v. Nakawatase, Rutkowski, Wyns & Yi, Inc.*, 192 Ill. App. 3d 766, 771 (1989). In *Senior Housing, Inc.*, the plaintiff sued the defendant for breach of contract based solely on a defect in a building the plaintiff hired the defendant to design and build. *Senior Housing, Inc.*, 192 Ill. App. 3d at 768-770. After the plaintiff initially notified the defendant of the defect, the defendant inspected the defect and instructed the contractor to take a remedial step. *Id.* at 768. When that failed, the defendant and the plaintiff met and additional remedial steps were taken *Id.* at 769. When the problems related to the defect persisted, the plaintiff hired someone else to correct the problem and demanded payment from the defendant, which ultimately lead to the plaintiff's lawsuit. *Id.*

¶ 34    The trial court granted the defendant's motion to dismiss based on the statute of limitations. *Id.* at 770. On appeal, the plaintiff argued that the defendant was "estopped by its actions from asserting the statute of limitations as a bar to the action." *Senior Housing, Inc.*, 192 Ill. App. 3d at 771. The defendant argued, in part, that "its actions *** consisted of mere investigation which does not provide sufficient grounds for estoppel." *Id.*

¶ 35    First, the *Senior Housing, Inc.* court found that,

"It is well-established that to invoke the doctrine of equitable estoppel, it

is not necessary to establish that the defendant intentionally misled or deceived

the plaintiff, or even that the defendant intended to induce delay. The only

requirements are that plaintiff reasonably relied on the defendant's conduct in

forbearing suit ([citation]) and that plaintiff suffered a detriment as a result of his

reliance upon the words or conduct of the defendant." *Senior Housing, Inc.*, 192 Ill. App. 3d at 771 (citing *AXIA, Inc. v. I.C. Harbour Construction Co.*, 150 Ill. App. 3d 645 (1986)).

In *AXIA*, the court found that a contractor's "conduct was sufficient to establish an estoppel to prevent [it] from shielding itself with the statute of limitations" where the contractor inspected the premises, "performed corrective work in apparent recognition of its contractual responsibilities," and "never disputed responsibility." *Id.* at 772 (citing *AXIA*, 150 Ill. App. 3d 645).

¶ 36　Relying on *AXIA*, the *Senior Housing, Inc.* court found that the defendant "was responsible for and took responsibility to direct the repair work," "acted in apparent acknowledgement of its responsibility under the contract," and there was "no evidence in the record of any denial of responsibility until the plaintiff demanded payment for repairs." *Senior Housing, Inc.*, 192 Ill. App. 3d at 772-73. The court found that "it was reasonable for [the] plaintiff to have refrained from filing its lawsuit in reliance on [the defendant's] representation that remedial measures would be taken, observed, and further corrected, if necessary." Accordingly, the court held that the defendant was "estopped by its actions from asserting the statute of limitations as a defense." *Senior Housing, Inc.*, 192 Ill. App. 3d at 773.

¶ 37　In this case, defendants respond that, subsequent authority has clarified that where a defendant does not take "affirmative steps" to remedy construction damage, that defendant is not equitably estopped from raising the statute of limitations as a defense. Defendants rely on *J.S. Reimer, Inc. v. Village of Orland Hills*, 2013 IL App (1st) 120106.

¶ 38　In *J.S. Reimer, Inc.*, the plaintiff sued an architectural firm, Barclay, that contracted with the plaintiff to design a building and inspect the construction work to make sure that it complied

with its plans and specifications. *J.S. Reimer, Inc.*, 2013 IL App (1st) 120106, ¶¶ 5, 9. The design called for the excavation of peat from the ground on which the building was to be built but the excavation was insufficient and the building began to sink. *Id.* ¶¶ 2, 6. The operative complaint alleged that Barclay's plans and specifications were defective because "they did not require the removal of all the peat from the site" and the excavator did not complete the excavation to Barclay's specifications but Barclay nevertheless approved pouring the concrete floor. *Id.* ¶ 9.

¶ 39    Prior to filing suit, when the plaintiff asked Barclay what caused the sinking floor, Barclay told the plaintiff it was the excavator's fault for not compacting the earthwork and fill under the floor. *Id.* ¶ 10. A subsequent report stated that the floor was built on "unsuitable soils" but, according to the plaintiff, "Barclay continued to deny that its design was defective and continued to blame [the excavator]." *Id.* "The [plaintiff] additionally alleged that, in reliance upon the expertise of Barclay, it pursued litigation against [the excavator] and against the construction manager but forbore to bring suit against Barclay." *J.S. Reimer, Inc.*, 2013 IL App (1st) 120106, ¶ 10.

¶ 40    Barclay moved for summary judgment based on the applicable statute of limitations. *J.S. Reimer, Inc.*, 2013 IL App (1st) 120106, ¶ 12. On appeal, the plaintiff, relying on *Senior Housing, Inc.* and *AXIA*, argued that "Barclay should be estopped from raising the statute of limitations because it lulled the [plaintiff] into complacency by undertaking responsibility for remedial measures until the period of limitations had ended." *J.S. Reimer, Inc.*, 2013 IL App (1st) 120106, ¶ 45. The *J.S. Reimer, Inc.* court distinguished those cases on the grounds that Barclay "did not take an active role in remediation," and the record did not reflect that Barclay "took any affirmative steps to remedy the sinking floor." Therefore, the court concluded, the plaintiff "was not entitled to rely upon Barclay's actions" in calling for various tests to be

performed on the project site in response to the sinking floor "to forbear from bringing suit against Barclay, and Barclay is not equitably estopped from raising the statute of limitations." *J.S. Reimer, Inc.*, 2013 IL App (1st) 120106, ¶ 48.

¶ 41 In this case, defendants argue that Miller's email "was not an action to remedy nor even a promise to do so." Defendants argue that the complaint does not allege that defendants took any "affirmative steps to remedy the property damage *** as legally required for *** the invocation of the doctrine of estoppel." Plaintiff replies *J.S. Reimer* is distinguished from this case by the existence of the declaration and the fact it imposed on Miller an obligation to repair the damages. Plaintiff argues that based on that obligation, plaintiff's "reliance was certainly reasonable, and her forbearance from filing suit was clearly to be expected. Plaintiff argues that defendants' cited authorities do not involve a similar obligation to undertake repairs, so the plaintiffs in those cases had "a higher burden *** [to] establish estoppel."

¶ 42 We disagree that the declaration distinguishes this case from the relevant authorities. In *Senior Housing, Inc.*, the court found that the defendant had a contractual obligation for repair work. *Senior Housing, Inc.*, 192 Ill. App. 3d at 772 ("the record indicates that it was responsible for and took responsibility to direct the repair work"). The *Senior Housing, Inc.* court did not rely on the defendant's contractual obligation for repair work to find that the plaintiff in that case could refrain from filing suit, as plaintiff suggests should be the outcome here. See *id.* at 772-773. Rather, the court relied on the fact the defendant " 'instructed' the contractor" on what repair work to undertake, informed the plaintiff it would observe those repairs to determine if they corrected the problem, and, when problems persisted, the defendant "indicated that it would notify the contractor so that corrective measures could be taken." *Senior Housing, Inc.*, 192 Ill. App. 3d at 772. Similarly, in *AXIA*, the contract with the relevant defendant "contained a

provision requiring the [defendant] to correct any defect in the building appearing within one year upon written notification by the owner." *AXIA*, 150 Ill. App. 3d at 648. We find that a contractual obligation to repair does not provide an independent basis to forbear filing a lawsuit.

¶ 43     In this case plaintiff argued that the affidavit in support of the response to the motions to dismiss raised an issue of fact as to estoppel, and if defendants wanted to argue that the affidavit was insufficient, it was defendants' burden to move to strike the affidavit. We find that accepting the affidavit as true, plaintiff has failed to establish that plaintiff's alleged reliance to forbear filing suit was reasonable. Plaintiff's averments are based on the declaration and Miller's email. As demonstrated above, plaintiff could not reasonably rely on the declaration, without action by defendants thereon, to forbear filing suit. Furthermore, although the *AXIA* court mentioned the defendant's "words" as a potential basis to estop it from invoking the statute of limitations, *AXIA* suggests that those "words" must be that repairs would be made or that corrective actions would cure the defect, not simply an acknowledgment that a defect exists and that it would be investigated. See *AXIA*, 150 Ill. App. 3d at 654 (and cases cited therein); 150 Ill. App. 3d at 656 (the defendant "was not merely engaging in negotiation and investigation of the problems, but took affirmative steps to remedy the matters in apparent acknowledgement of its responsibility under the contract"). Miller's email implies nothing more than investigation of the alleged damage. See *Village of Big Rock v. H. Linden & Sons Sewer & Water, Inc.*, 2019 IL App (2d) 190186-U, ¶ 39 ("it is well established that the mere pendency of negotiations conducted in good faith is insufficient to give rise to estoppel" (Internal quotation marks omitted.)).

¶ 44     Although the record may not reveal that defendants disputed their responsibility to repair the construction defects during the limitations period, neither does the record demonstrate "affirmative steps to remedy the matters in *** acknowledgment of [their] responsibility." *AXIA*,

150 Ill. App. 3d at 656, *J.S. Reimer, Inc.*, 2015 IL App (1st) 120106, ¶ 48. As defendants point out, plaintiff admits that defendants took no action whatsoever to repair the construction defects. Therefore, we find that plaintiff's reliance on Miller's email and Article XX of the declaration to forebear filing a lawsuit based on the construction defects was not reasonable, and defendants may assert the statute of limitations as a defense.

¶ 45     Plaintiff does not dispute the applicability of the five-year statute of limitations to plaintiff's "construction damages" claims, arguing only that defendants were estopped to raise it. We find that based on the record before the court estoppel did not apply; therefore, we find that based on the record before the trial court, plaintiff's claims based on construction damages, of which plaintiff was aware at least by January 2017, were barred, and the trial court properly granted defendants' motions to dismiss those claims.

¶ 46     Nonetheless, we find that the trial court abused its discretion by dismissing those claims with prejudice. Plaintiff did not submit a proposed amended complaint to the trial court. As noted above, the failure to submit a proposed amended complaint to the trial court can result in forfeiture of the issue on appeal. *Porada*, 2018 IL App (1st) 171818, ¶ 19. However, in *Biggerstaff v. Moran*, 284 Ill. App. 3d 196, 200 (1996), this court found that "[e]ven though [the] plaintiffs did not tender a proposed amended complaint to the trial court, they preserved the issue for appeal." *Moran*, 284 Ill. App. 3d at 200. This court found:

> "A proposed written amendment is not always necessary for this court to consider whether the trial court abused its discretion in denying the plaintiff leave to file an amended complaint. While a proposed amendment is desirable, it is not crucial if the record shows that the plaintiff articulated the amendment's substance and reasons to the trial court in such a manner that the materiality of the

proposed alteration was made plain to the court. [Citation.]" *Moran*, 284 Ill. App. 3d at 200.

¶ 47 In *Moran*, the plaintiffs "requested leave to file an amended complaint," "argued their position extensively," indicated the proposed contents of the amendment, and "the issue was argued in the trial court." *Id.* at 200. In *Moran*, the trial court "denied plaintiffs leave to file an amended complaint, but did allow them to file the proposed amended complaint in the record." *Id.* In this case, at argument on the motions to dismiss, plaintiff's counsel argued extensively for leave to amend the complaint and represented that plaintiff could plead additional facts, in the form of representations by Miller, to establish estoppel. See *supra*, ¶ 43 (citing *AXIA*, 150 Ill. App. 3d at 654 (and cases cited therein)). We find that plaintiff articulated the amendment's substance and reasons for the amendment to the trial court "in such a manner that the materiality of the proposed alteration was made plain to the court." Additionally, the reason failure to tender a proposed amended complaint can result in forfeiture is because the failure to do so "significantly diminishes this court's ability to determine whether the proposed amendment would have stated a viable cause of action." *Firebirds International, LLC*, 2022 IL App (1st) 210558, ¶ 43. Although there is no proposed amended complaint in the record, we can determine whether the proposed amendment in this case could state a viable claim of estoppel. Based on the foregoing, we find that we may consider whether the trial court abused its discretion in denying plaintiff leave to file an amended complaint.

¶ 48 The trial court did not address plaintiff's arguments related to amending the complaint in its written order. "In order that litigants may fully present their causes of action and settle their controversies on the merits, the greatest liberality should be provided in allowing amendments." *Calumet Construction Corp. v. Metropolitan Sanitary District of Greater Chicago*, 222 Ill. App.

3d 374, 381 (1991). We find no basis on which to deny plaintiff the opportunity to attempt to plead facts to establish that defendants are estopped from asserting the statute of limitations defense to plaintiff's "construction damages" claims. See *supra*, ¶ 47. Therefore, we vacate that portion of the trial court's order dismissing plaintiff's "construction damages" claims with prejudice and remand with directions to grant plaintiff leave to file an amended complaint.

¶ 49    D.   Statute of Limitations Applicable to Claims for Breach of the Declaration

¶ 50    Plaintiff argues that as to claims specifically against Miller for breach of the declaration, the ten-year statute of limitations applicable to written contracts applies.

¶ 51    Condominium declarations define the units and common elements and establish the rights and obligations of owners. *1400 Museum Park Condominium Ass'n by Board of Managers v. Kenny Construction Co.*, 2021 IL App (1st) 192167, ¶ 49. "Condominium declarations are covenants running with the land." (Internal quotation marks omitted.) *Id.* "A covenant is a contract to which the ordinary rules of contract construction apply." (Internal quotation marks omitted.) *Id.* "A declaration of condominium serves as the contract between the association and the unit owners governing the operation of the condominium property and association and sets forth the board's duties related to management of the property and association." *Wood v. Evergreen Condominium Ass'n*, 2021 IL App (1st) 200687, ¶ 17.

¶ 52    The statutes provide a five-year statute of limitations on actions on "unwritten" contracts and "all civil actions not otherwise provided for." *Portfolio Acquisitions, L.L.C.*, 391 Ill. App. 3d at 647 (quoting 735 ILCS 5/13-205 (West 2006)). The statutes provide a ten-year statute of limitations on actions on "written" contracts. *Id.* (quoting 735 ILCS 5/13-206 (West 2006)).

"Illinois courts follow a strict interpretation of the meaning of a written agreement for purposes of the statute of limitations. [Citation.] A contract will

- 21 -

only be deemed written if parties are identified and all the essential terms are in writing and ascertainable from the instrument itself. If resort to parol evidence is necessary to identify the parties or essential terms, the contract is considered an oral contract for purposes of the statute of limitations. [Citation.]" *Portfolio Acquisitions, L.L.C.*, 391 Ill. App. 3d at 647 (citing *Brown v. Goodman*, 147 Ill. App. 3d 935, 939 (1986)).

In *Portfolio Acquisitions, L.L.C.* the court found that "parol evidence would still be required to show all essential terms and conditions of the contract. Parol evidence would also be required to show the relationship between the parties and demonstrate defendant's receipt and acceptance of the essential terms." *Portfolio Acquisitions, L.L.C.*, 391 Ill. App. 3d at 652. Therefore, the court found, "the contract at issue is considered to be an oral contract for purposes of the statute of limitations and the five-year period of section 13-205 applies." *Portfolio Acquisitions, L.L.C.*, 391 Ill. App. 3d at 652.

¶ 53    In this case, plaintiff first identifies the specific claims based on alleged breaches of the declaration, either as an alleged breach of contract or breach of a fiduciary duty, which plaintiff identifies as the "non-construction claims," as follows:

1.  Improperly purchasing units without notice or invoking a right of first refusal,

2.  Failing to complete repairs to the building,

3.  Failing to properly maintain an adequate reserve fund to maintain the building,

4.  Failing to provide a schedule of regular maintenance,

5.  Failure to pay Association assessments, and

6.  Failure to obtain Board approval for Miller's construction project and to disclose the construction project.

¶ 54    Plaintiff argues that, as to claims against Miller, this "court can determine all of the issues based on the four corners of the Declaration, and as it has been amended." Plaintiff argues (1) both Miller and plaintiff's husband signed the third amendment to the declaration, which became a part of the original declaration; and (2) pursuant to Article XX of the declaration, "Miller remains obligated to repair the damage that she caused," and Miller's failure to do so is a breach of the contract subject to a ten-year statute of limitations. Defendants respond plaintiff is not personally identified within the four corners of the declaration and parol evidence would be required to prove the existence of that essential term. In reply, plaintiff argues that "as the owner of a unit in the building, [plaintiff] clearly has a written agreement with the Association regardless of whether she is specifically named in it." Plaintiff argues that the declaration is a complete contract governing the conduct between the association and its unit owners, and the declaration identifies plaintiff's unit as part of the association. However, plaintiff admits that "as a unit owner in the Building extrinsic evidence would be necessary to establish [plaintiff] as a party to or at the very least a beneficiary of the declaration." Seemingly to abrogate the force of this admission, plaintiff merely cites, but does not argue the applicability of, *In re Estate of Garrett*, 24 Ill. App. 3d 895, 899 (1975).

¶ 55    Plaintiff's only legal authority in support of finding that the declaration is a "written" contract between plaintiff, as a unit owner, and defendants, is *Palm v. 2800 lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 75. (Plaintiff offers no legal authority supporting a conclusion that the contract is written for purposes of the statute of limitations because plaintiff's spouse signed the amendment to the declaration. Accordingly, we consider that "bald assertion" forfeited. *In re Marriage of Hendry*, 409 Ill. App. 3d 1012, 1019 (2011) (failure to support contention with argument beyond "bald assertion" is a failure to comply with

Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) resulting in forfeiture on appeal).). The *Palm* court held that "[t]he declaration is the contract between the association and the unit owners governing the operation of the condominium property and association and sets forth the board's duties related to management of the property and association." *Palm*, 2014 IL App (1st) 111290, ¶ 75. The *Palm* court did not address the question of whether the condominium declaration in that case was a "written" contract for purposes of the statute of limitations. *Palm*, 2014 IL App (1st) 111290, ¶ 27 ("The [trial] court also denied defendants' motion to dismiss the third amended complaint on the basis of the statute of limitations, finding that the allegations in the second and third amended complaints 'relate back' to the original and first amended complaints and were, therefore, not barred by the statute of limitations."). Therefore, *Palm* does not aid plaintiff's position in this case. See *Portfolio Acquisitions, L.L.C.*, 391 Ill. App. 3d at 650-52 (citing *Parkis v. Arrow Financial Services, LLS*, 07 C 410, 2008 WL 94798, at *6 (N.D. Ill. Jan. 8, 2008) (distinguishing *Harris Trust & Savings Bank v. McCray*, 21 Ill. App. 3d 605, 610 (1974), on the basis that *Harris Trust* found the ten-year statute of limitations applied but did not address whether the contract was "written" for purposes of the statute of limitations)).

¶ 56    Next, plaintiff's citation to *In the Matter of the Estate of Garrett v. Garrett*, 24 Ill. App. 3d 895, 899 (1975), does not lead us to the conclusion that the declaration is a written contract for purposes of the statute of limitations. We find that for purposes of plaintiff's claims for breach of the declaration against Miller, *Garrett* compels the conclusion that the declaration is *not* a written contract for purposes of the statute of limitations. The writing at issue in *Garrett* was a handwritten note on the reverse side of a promissory note stating that the promisor's sons loaned the promisor the money to repay the note and directing that the sons be repaid from the promisor's estate. *Garrett*, 24 Ill. App. 3d at 896-97. The court found that "the writings do

constitute 'other evidences of indebtedness in writing.' " *Id.* at 898. The court specifically found

that the writings before the court were "by themselves complete, thus eliminating the necessity

of resort to parol evidence." *Id.* Particularly as it relates to this case, the court noted that the

"parties to the agreement *** are indicated therein." *Id.*

¶ 57    The *Garrett* court distinguished *Mullberg v. Johnson*, 340 Ill. App. 92 (1950), which

found that an action was barred by the five-year statute of limitations where the plaintiff was not

"mentioned in the instrument by name or otherwise." *Mullberg*, 340 Ill. App. at 95, 100. The

*Mullberg* court quoted extensively from *Railway Passenger & Freight Conductors Mutual Aid &*

*Benefit Ass'n v. Loomis*, 142 Ill. 560, 567 (1892), as follows:

" 'It is clear, therefore that parol testimony must be resorted to, in order to

connect the plaintiff with the contract as a party thereto. *** As the plaintiff is not

named as a party in the certificate of membership and constitution and by-laws,

the latter can no more be regarded as an evidence of indebtedness in writing to her

than they can be regarded as a written contract with her. *** it is necessary to go

outside of the certificate of membership *** and by-laws *** and introduce oral

evidence of extrinsic facts, in order to bring the plaintiff within the scope and

meaning of the requirements embodied in such *** by-laws. Undoubtedly a

contract existed between plaintiff and the association, but it was not a written

contract. It was an implied contract, a contract created by operation of law out of

the certificate and *** by-laws on the one hand, and the oral testimony connecting

plaintiff therewith on the other hand. *** Inasmuch, therefore, as the contract,

upon which a recovery is sought in this case must be regarded as an unwritten and

implied contract, *** the action upon it was barred in five years.' " *Mullberg*, 340 Ill. App. at 96-97 (quoting *Loomis*, 142 Ill. at 567).

¶ 58      Plaintiff admits that parol evidence is required to identify plaintiff as a party to the declaration. Furthermore, the declaration defines "Unit Owner" as "the person or persons whose estates or interests, individually or collectively, aggregate fee simple absolute ownership of a Unit." As in *Mulberg*, "[p]laintiff is not mentioned in the instrument by name or otherwise." *Mullberg*, 340 Ill. App. at 95. The holding in *Garrett* is not applicable in this case. What is applicable in this case is the *Garrett* court's finding that, "[w]hether an action is based on a written contract ***, the action must be upon the writing and it is not enough that the evidence by which the cause of action is supported is in writing." *Garrett*, 24 Ill. App. 3d at 898.

¶ 59      In this case, the declaration may provide the evidence by which plaintiff's causes of action might be supported, but that is not enough to make this an action based on a written contract. *Id.* Because "resort to parol evidence is necessary to identify the parties ***, the contract is considered an oral contract for purposes of the statute of limitations. [Citation.]" *Portfolio Acquisitions, L.L.C.*, 391 Ill. App. 3d at 647. Therefore, the five-year statute of limitations applies to plaintiff's claims for breach of the declaration. 735 ILCS 5/13-205 (West 2022).

¶ 60                                    E. Discovery Rule

¶ 61      Having found that the five-year statute of limitations applies to plaintiff's claims for alleged breaches of the declaration ("non-construction damages" claims) and that defendants were not estopped from asserting the five-year statute of limitations as a defense to either the "construction damages claims" or the "non-construction damages" claims, we must now determine whether the discovery rule applies. Before reaching that question, however, we note

that plaintiff has asserted that if the five-year statute of limitations does apply to plaintiff's "non-construction damages" claims, then the complaint alleges that defendants' breaches of the declaration "have been ongoing and continuous so that the case was filed well within a five year statute of limitation for Breach of Contract and Fiduciary Duty." This court has recognized that "under the 'continuing tort' or 'continuing violation' theory, where the tort involves continuous or repeated injurious behavior, by the same actor and of a similar nature, the limitations period is held in abeyance and the plaintiff's cause of action does not accrue until the date the final injury occurs or the tortuous acts cease." *Taylor v. Board of Education of City of Chicago*, 2014 IL App (1st) 123744, ¶ 46.

> " 'A continuing violation *** is occasioned by continuing unlawful acts and conduct, not [merely] by continual ill effects from an initial violation.' [Citation.] If the injury is in fact ongoing, any limitations period would not have begun to run until the date of the last injury. [Citation.] By contrast, where a single overt action, rather than a series of acts, produces continued ill effects or injury, the statute of limitations begins to run at the time the single overt action occurred." *Roark v. Macoupin Creek Drainage District*, 316 Ill. App. 3d 835, 847 (2000).

¶ 62    Plaintiff has failed to develop any argument that defendants committed "a series of tortuous acts amounting to a continuous whole" (*Taylor*, 2014 IL App (1st) 123744, ¶ 46) and not merely that plaintiff has suffered continued ill effects from a single overt action (*Roark*, 316 Ill. App. 3d at 847). We find that this argument is forfeited. *Bunjo v. State Farm Fire & Casualty Co.*, 2025 IL App (1st) 241010, ¶ 32 ("This court is not a repository for an appellant to foist the burden of argument and research.").

¶ 63    Plaintiff argues that the "affidavit made it clear that [plaintiff] did not discover until March of 2022 that the Board failed to establish a reserve fund." In response to plaintiff's argument concerning that specific claim, defendants argue that "the claimed deficiency in the reserves also expressly relates to the claimed 2016-era construction work and Defendants' action in that timeframe, and it is therefore also properly barred under the applicable statute of limitations of Section 13-205." Alternatively, defendants argue that plaintiff forfeit the argument that the complaint contains allegations unrelated to property damage caused by the construction by failing to raise it in the trial court. In reply, plaintiff argues that "the specific demarcation of these Non-Construction Claims *** as opposed to the damaged [*sic*] caused by the Miller Construction project or the Construction Claims were raised and made clear so they were certainly not waived on this appeal."

¶ 64    "Since the officers of a condominium association and the members of its board owe a fiduciary duty to the members of the association, if the officers and directors fail to act in a manner reasonably related to the exercise of that duty, liability will result not only for the association but also for the individuals themselves. [Citation.]" *Henderson Square Condominium Ass'n v. LAB Townhomes, L.L.C.*, 2014 IL App (1st) 130764, ¶ 126, *affirmed*, 2015 IL 118139. "Furthermore, a board's proper exercise of its fiduciary duty requires strict compliance with the condominium declaration and bylaws." *Board of Managers of Weathersfield Condominium Ass'n v. Schaumburg Limited Partnership*, 307 Ill. App. 3d 614, 622 (1999).

    "[T]he discovery rule *** delays commencement of the statute of limitations until the plaintiff knows or reasonably should have known of the injury and that it may have been wrongfully caused. [Citation.] The discovery rule effectively postpones the start of the limitations period. [Citation.] Under this rule, the statute of limitations begins to run

- 28 -

when the injured party has a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue. [Citations.]" (Internal quotation marks omitted.) *Scheinblum*, 2021 IL App (1st) 200798, ¶ 24.

"When a plaintiff uses the discovery rule to delay the commencement of the statute of limitations, the burden is on the plaintiff to prove the date of discovery." *Id.* ¶ 25. "Generally, whether a plaintiff had the requisite knowledge under the discovery rule to know or should know of an injury is a question of fact." *Scheinblum*, 2021 IL App (1st) 200798, ¶ 26. "[T]his court has previously stated that the 'identification of one wrongful cause of [the plaintiff's] injuries initiate[d] his limitations period as to all other causes.' [Citation.]" *Scheinblum*, 2021 IL App (1st) 200798, ¶ 29.

¶ 65    First, we find that plaintiff has not forfeited the argument that the claim that defendants breached the declaration by failing to adequately fund a reserve to maintain the building is not barred by the five-year statute of limitations because plaintiff allegedly discovered the failure in March 2022. Nor is plaintiff's argument that defendants' alleged breaches based on Miller's purchase of condominium units are unrelated to damages caused by the construction forfeited for appeal. Initially we note that, although defendants failed to cite relevant authority, if plaintiff's alleged damages for "non-construction claims" (*supra*, ¶ 53) arose from the construction defects, of which plaintiff was aware at least by January 2017, then the statute of limitations would have begun to run at that time. *Fish*, 2015 IL App (1st) 140526, ¶ 41 (the plaintiff's knowledge of a wrongful cause of their injury, even if they had only identified one act as that cause, rather than a separate, related act commenced the statute of limitations). For that reason, we find that plaintiff's claim for "Failure to obtain Board approval for Miller's construction project and to disclose the construction project" is barred by the statute of limitations. *Supra*, ¶ 53.

- 29 -

¶ 66     Plaintiff argued in the trial court that certain breaches, including the breach of the right-of-first-refusal provision in the declaration and the failure to fund a reserve, were unrelated to construction damages and, moreover, that "the discovery rule applies to these claims." In the response to defendants' motions to dismiss, plaintiff argued that "the defendant [*sic*] breached its fiduciary duty by failing to fund a reserve to pay for common area maintenance and the defects alleged to be present in this matter." Later in the response, plaintiff argued that "many of the allegations in this matter do not relate to damage caused by construction, but rather, to the lack of the Board's compliance with the Declaration \*\*\*. These breaches are based on contract \*\*\*."

¶ 67     Furthermore, Count I of plaintiff's complaint alleged defendants breached the right of first refusal provision in the declaration by not requiring Miller to acquire title to units "in a proper and legitimate manner" and by "[e]ngaging in self[-]dealing [to] obtain the units \*\*\*." Those allegations in Count I (paragraphs 37 and 38 of the complaint) do not mention the construction damages. Count II of the complaint for breach of fiduciary duties alleged that the individual defendants all had a fiduciary duty to plaintiff, that part of those duties were to "[p]ay all costs for construction, maintenance, and repair" and to "[p]rovide a schedule of regular maintenance and repair and perform all necessary repairs." Count II separately alleged that defendants breached their fiduciary duties because they, (1) "[f]ailed to provide sufficient funds and/or an adequate reserve fund to properly maintain the Premises *so as to* eliminate, repair, replace, or prevent the Defective Conditions," and (2) "[f]ailed to provide for a schedule of regular maintenance of the Premises *and in particular* of the defective areas and elements identified above, and failed to make or cause to be made all necessary repairs \*\*\* as were necessary to comply with the provision of the Declaration \*\*\*." (Emphases added.) Finally, on appeal, plaintiff argues that the "non-construction damages" claims damaged plaintiff by

"contribut[ing] to the diminution in value of [plaintiff's] unit, making effective marketability of the unit less likely."

¶ 68    We find that, accepting all reasonable inferences in plaintiff's favor, the complaint alleges damages from alleged breaches of the declaration independent of the construction damages. *Carney v. Donley*, 261 Ill. App. 3d 1002, 1010 (1994) (recognizing claim that individual unit owners/board members breached their fiduciary duties to the unit owners when they knowingly acted contrary to the declaration but finding no breach where the defendants did not act unreasonably or fail to properly exercise their business judgment), *Board of Managers of Weathersfield Condominium Ass'n*, 307 Ill. App. 3d at 620-21 (finding the "plaintiffs' complaint adequately set forth facts to show that defendants breached a fiduciary duty to maintain adequate reserves" where the complaint alleged "the capital improvements *** were reaching the end of their useful life and *** that [the] defendants failed to maintain adequate reserves for repair of the common areas"), *id*. at 623 ("What constitutes 'reasonable reserves' *** should be determined by the trier of fact.").

¶ 69    In response to the motions to dismiss, plaintiff averred that "March of 2022 is *** the time when [plaintiff] first learned that the Board did not set aside reserve funds for common area maintenance in the building, *or* any of my damages from [the] construction work." (Emphasis added.) Defendants do not refute that assertion but "it is plaintiff's burden to plead sufficient facts to avoid dismissal based on the statutes of limitations." *Osten v. Northwestern Memorial Hospital*, 2018 IL App (1st) 172072, ¶ 19, *Racquet v. Grant*, 318 Ill. App. 3d 831, 838 (2000). Similarly, although the complaint alleges that Miller's condominium purchases were completed by November 2017, neither the complaint nor the affidavit alleges when plaintiff became aware of Miller's purchase of condominium units through other entities or became aware that plaintiff

was damaged thereby. Defendants argue that the right of first refusal that forms the basis of plaintiff's claim related to Miller's purchase of the additional units is for the benefit of the association and not individual unit owners. However, plaintiff alleged that defendants breached the declaration and engaged in self-dealing by failing to exercise the Board's right of first refusal—not that the Board denied plaintiff the right to exercise a right of first refusal. Nor does the complaint allege facts as to the discovery of plaintiff's remaining "non-construction claims."

¶ 70    We cannot say that it is clear that there is no set of facts under which plaintiff would be entitled to recover on these breach of contract and breach of fiduciary duties claims. We find that we have sufficient information to determine whether the trial court abused its discretion in denying plaintiff's request to amend the complaint. *Moran*, 284 Ill. App. 3d at 200. There is a genuine issue of material fact as to when plaintiff discovered the alleged breaches and whether plaintiff was injured other than by the alleged defects caused by the construction and/or the consequences thereof. Subject to plaintiff's ability to plead sufficient facts to establish estoppel as to the construction damages, plaintiff should separately be allowed leave to attempt replead her claims for breach of fiduciary duties or breach of the declaration to include facts of plaintiff's discovery of the claims and any injuries independent of the failure to repair, or to maintain funds to repair, the construction damages.

¶ 71                                   CONCLUSION

¶ 72    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, vacated in part, and the cause is remanded, with directions.

¶ 73    Affirmed in part, vacated in part, and remanded with directions.